[No. 48413–9.   En Banc.   April 14, 1983.]

POWER, *Appellant,* v. THE WASHINGTON WATER
POWER COMPANY, *Respondent.*

*James A. Bamberger,* for appellant.

*Paine, Hamblen, Coffin & Brooke,* by *David J. Meyer,* for respondent.

*Paul G. Cornelius* and *Kenneth E. Reeves* on behalf of National Consumer Law Center, Inc., amici curiae for appellant.

DOLLIVER, J.—The Public Utility Regulatory Policies Act of 1978 (PURPA), 16 U.S.C. §§ 2601–45 (Supp. 4, 1980), was enacted by Congress in part to encourage energy conservation and to provide equitable retail rates for electricity consumers. 16 U.S.C. § 2601. The act sets out ratemaking and utility service standards designed to further the purposes of the act. *See* 16 U.S.C. §§ 2621(d), 2623–25. It requires state regulatory authorities to consider whether federal ratemaking and utility service standards and lifeline rate provisions are appropriate under conditions and circumstances facing state utilities and consumers. 16 U.S.C. §§ 2621(a), 2622.

PURPA creates for consumers a federal right of participation and intervention in proceedings by state regulatory authorities to determine whether the state regulatory authority should adopt the ratemaking and utility service standards expressed in the act. 16 U.S.C. § 2631(a). *See* H.R. Conf. Rep. No. 1750, 95th Cong., 2d Sess. 63, 81, *reprinted in* 1978 U.S. Code Cong. & Ad. News 7797, 7815. Electric utilities in proceedings under the act are required to compensate electric consumers who substantially contribute to partial or total approval of positions advocated by them for "reasonable attorneys' fees, expert witness fees, and other reasonable costs". 16 U.S.C. § 2632(a)(1). Where a state provides an "alternative means for assuring representation of electric consumers" (16 U.S.C. § 2632(a)(1)), however, PURPA waives the requirement for compensation for the costs of intervention. *See* 16 U.S.C. § 2632(b).

Plaintiff Peoples Organization for Washington Energy Resources (POWER) is a nonprofit corporation organized to represent consumers before the Washington Utilities and Transportation Commission (Commission). POWER intervened in cause U–80–13 (Washington Utilities and Transportation Commission v. The Washington Water Power Company) in which the Commission considered the applicability of the PURPA ratemaking and utility service guidelines to rate increases requested by Washington Water Power Company (WWP). POWER was represented at the Commission proceedings by Spokane Legal Services Center. Also appearing in the ratemaking proceedings was Donald A. Ericson, a special assistant attorney general appointed to represent "the people of the state of Washington". *See* RCW 80.01.100.

During the proceedings, attorneys for POWER cross–examined expert witnesses presented by WWP and the Commission staff and presented opening and closing arguments summarizing its position on a number of issues. POWER also presented testimony relating to the allocation of the rate increase among customer classes according to "cost of service" considerations, the use of "declining block rates" for certain customer classes, the adoption of a "baseline/lifeline" residential rate design, and the inclusion of the cost of construction work in progress in the utility's rate base. Special Assistant Attorney General Ericson cross–examined expert witnesses, presented a closing argument, and garnered the testimony of citizens at public hearings held by the Commission following presentation of expert testimony. Neither Ericson nor attorneys for POWER retained expert witnesses or independent consultants to analyze expert testimony presented at the ratemaking proceeding.

On January 26, 1981, the Commission entered its third supplemental order in cause U–80–13. The Commission's order rejected WWP's cost of service study, adopted a 3–tier inverted residential baseline rate design, and directed WWP to show why declining block rates should be main-

tained for its commercial and industrial customers. Attorneys for POWER then moved for compensation of the costs and fees associated with its advocacy in the case. The Commission denied the motion, apparently in the belief that the participation of Special Assistant Attorney General Ericson in the rate case constituted "alternative means for assuring representation of electric consumers", thereby precluding reimbursement of intervenor costs and fees under 16 U.S.C. § 2632. Pursuant to 16 U.S.C. § 2632(a)(2), POWER brought this civil action in Thurston County Superior Court to collect its attorney fees and costs. The Superior Court granted WWP's summary judgment motion denying attorney fees and costs to POWER.

Two issues confront us: (1) whether existing statutes provide for adequate representation by a special assistant attorney general of consumer interests; and (2) whether there was adequate representation in this case. We answer both in the affirmative.

The relevant portions of PURPA are as follows:

(a) Compensation for costs of participation or intervention

(1) If no alternative means for assuring representation of electric consumers is adopted in accordance with subsection (b) of this section and if an electric consumer of an electric utility substantially contributed to the approval, in whole or in part, of a position advocated by such consumer in a proceeding concerning such utility, and relating to any standard set forth in subchapter II of this chapter, such utility shall be liable to compensate such consumer (pursuant to paragraph (2)) for reasonable attorneys' fees, expert witness fees, and other reasonable costs incurred in preparation and advocacy of such position in such proceeding (including fees and costs of obtaining judicial review of any determination made in such proceeding with respect to such position).

(2) A consumer entitled to fees and costs under paragraph (1) may collect such fees and costs from an electric utility by bringing a civil action in any State court of competent jurisdiction, unless the State regulatory authority (in the case of a proceeding concerning a State regulated electric utility) or nonregulated electric utility

(in the case of a proceeding concerning such nonregulated electric utility) has adopted a reasonable procedure pursuant to which such authority or nonregulated electric utility—

    (A) determines the amount of such fees and costs, and

    (B) includes an award of such fees and costs in its order in the proceeding.

(3) The procedure adopted by such State regulatory authority or nonregulated utility under paragraph (2) may include a preliminary proceeding to require that—

    (A) as a condition of receiving compensation under such procedure such consumer demonstrate that, but for the ability to receive such award, participation or intervention in such proceeding may be a significant financial hardship for such consumer, and

    (B) persons with the same or similar interests have a common legal representative in the proceeding as a condition to receiving compensation.

(b) Alternative means

Compensation shall not be required under subsection (a) of this section if the State, the State regulatory authority (in the case of a proceeding concerning a State regulated electric utility), or the nonregulated electric utility (in the case of a proceeding concerning such nonregulated electric utility) has provided an alternative means for providing adequate compensation to persons—

    (1) who have, or represent, an interest—

    (A) which would not otherwise be adequately represented in the proceeding, and

    (B) representation of which is necessary for a fair determination in the proceeding, and

    (2) who are, or represent an interest which is, unable to effectively participate or intervene in the proceeding because such persons cannot afford to pay reasonable attorneys' fees, expert witness fees, and other reasonable costs of preparing for, and participating or intervening in, such proceeding (including fees and costs of obtaining judicial review of such proceeding).

16 U.S.C. § 2632(a), (b).

Whether the appearance of a special assistant attorney general in a ratemaking proceeding under RCW 80.01.100 satisfies the requirements of 16 U.S.C. § 2632 is a novel

question for Washington courts; nor, apparently, have either the courts of other states or the federal courts yet considered the adequacy of alternative methods of representation pursuant to 16 U.S.C. § 2632(b). *Cf. Coalition for Fair Util. Rates, Inc. v. Baker,* 656 F.2d 593, 595 (10th Cir. 1981) (intervenors must exhaust state court remedies prior to bringing compensation action in federal court under 16 U.S.C. § 2633). PURPA is silent as to what constitutes adequate representation of consumer interests in state utility regulatory proceedings. The legislative history of the act indicates a state may provide representation for electricity consumers sufficient to preclude compensation for their intervention by establishing "an adequately funded office of public counsel" to represent consumers. H.R. Conf. Rep. No. 1750, *supra* at 83. *See Re Costs of Participation in Elec. Rate–making Proceedings,* 37 Pub. Util. Rep. 4th 259, 265 (Cal. P.U.C. 1980). *Cf. Re Procedure for Comp. of Elec. Consumers,* 38 Pub. Util. Rep. 4th 127, 132 (Alaska P.U.C. 1980) (participation of public utility commission staff does not necessarily preclude intervenor compensation under 16 U.S.C. § 2632).

Commentators generally suggest effective public participation in utility regulatory proceedings depends largely on the consumer advocate's ability to employ expert witnesses to testify on behalf of residential consumers in utility proceedings. *See, e.g.,* Barvick, *Public Advocacy Before the Missouri Public Service Commission,* 46 UMKC L. Rev. 181, 218–20 (1977); Goodman, *The Role of Consumer Advocacy Before the Public Utilities Commission of Ohio,* 8 Cap. U. L. Rev. 213, 225 (1978). *See generally* Gormley, *Statewide Remedies for Public Underrepresentation in Regulatory Proceedings,* 41 Pub. Ad. Rev. 454 (1981); Leflar & Rogol, *Consumer Participation in the Regulation of Public Utilities: A Model Act,* 13 Harv. J. on Legis. 235 (1976). Without technical resources sufficient to match those of the utility companies they oppose, consumer advocates will become little more than nominal representatives of the public interest. *See* Barvick, 46 UMKC L. Rev. at

218; Gormley, 41 Pub. Ad. Rev. at 456. In the words of one commentator:

> Questions concerning construction work in progress, marginal cost pricing, the cost of capital, and accounting practices cannot be resolved through rhetoric alone. If public advocates are to be heeded, they must specify both a goal (e.g., low residential rates) and a method to obtain that goal (e.g., a different technique for determining the cost of capital). The best antidote to private expertise is public expertise. Without it, public advocates are unlikely to be taken seriously in a complex policy area.

Gormley, 41 Pub. Ad. Rev. at 456.

█ Under existing statutes the Attorney General is authorized to hire special assistant attorneys general. RCW 43.10.060 and .125. The special assistant is authorized to hire the "experts, scientists, technicians, or other specially qualified persons as he deems necessary" to aid in a proceeding. RCW 43.10.080. *See also* RCW 80.20.020. RCW 80.01.100 imposes on the Attorney General the "duty . . . to represent and appear for the people of the state of Washington" in all ratemaking actions before the Commission under RCW Titles 80 and 81. These costs must be borne by the utility. RCW 80.20.020. *See* 16 U.S.C. § 2632(a); *Re Costs of Participation in Elec. Rate–making Proceedings,* 37 Pub. Util. Rep. 4th 259 (Cal. P.U.C. 1980).

To meet the requirements of PURPA public counsel must be: (1) independent of the statute's regulatory authority; (2) empowered to appear and participate in any regulatory or judicial proceeding; (3) authorized to retain outside experts and consultants in particular cases; and (4) authorized to hire and retain sufficient staff. We hold the special assistant attorney general has sufficient statutory authority to be an appropriate alternate means of representation and is empowered to provide the kind of representation which is necessary to meet the requirements of PURPA.

We point out, however, that the scope of this representation is subject to the limitation of 16 U.S.C. § 2632(b)(1).

The Attorney General in providing alternative means is not required to represent the views of those consumers whose position is otherwise adequately represented. *Accord, Re Costs of Participation in Elec. Rate–Making Proceedings,* 37 Pub. Util. Rep. 4th 259 (Cal. P.U.C. 1980); *Re Costs of Participation in Comm'n Proceedings on PURPA,* 37 Pub. Util. Rep. 4th 280, 283 (Me. P.U.C. 1980). Furthermore, only that representation necessary for a "fair determination in the proceeding" (16 U.S.C. § 2632(b)(1)(B)) is required.

POWER, which claims to represent "low income and senior citizen ratepayers", contends there normally will be conflicts among different classes of ratepayers, and suggests any segment of the public with a particular consumer viewpoint is entitled to be separately represented. We do not agree with this position. While there may be a wide variety of consumer interests, we believe the statute contemplates that an adequately funded and staffed public counsel, as is provided for in this state, is sufficient. *See* H.R. Conf. Rep. No. 1750, *supra*; H.R. Rep. No. 496, pt. 4, 95th Cong., 2d Sess. 148, *reprinted in* 1978 U.S. Code Cong. & Ad. News 8454, 8590 (report to the House Committee on Interstate and Foreign Commerce).

█ As to the adequacy of representation in this case, it must first be noted neither the special assistant attorney general nor the plaintiff asked for expert witnesses and plaintiff does not ask for expert witness fees. Since plaintiff chose not to call any expert witnesses on its behalf, it is difficult to see where it suffered from inadequate representation because the special assistant attorney general also failed to call any experts.

In its complaint plaintiff states the PURPA mandated issues before the Commission were:

3.2(a) Whether to adopt the company's cost of service study as the proper way to reflect cost responsibility of various customer classes in determining how any revenue increase should be allocated among those classes in a manner consistent with the "cost of service" PURPA standard, 16 U.S.C. §2621(d)(1);

3.2(b) Whether to continue or dispense with a declining block rate design as the method of pricing electricity to certain customer classes; and

3.2(c) Whether to adopt a three tier inverted baseline/lifeline residential rate design.

An analysis of the order issued by the Commission indicates the action taken by the Commission in cause U–80–13 was not dependent on POWER and adequate representation for consumers was given either by the Commission staff or by the special assistant attorney general. On the issue of cost of service, the third supplemental order of the Commission in cause U–80–13 (electrical) and cause U–80–14 (gas) (Washington Utilities and Transportation Commission v. The Washington Water Power Company) indicates the position adopted by the Commission was that of the staff. As the Commission observed in the order, "Counsel for both the public and intervenor, POWER, et al., supported the Staff in both rate spread and rate design." Clerk's Papers, at 196.

On the issue of declining block rates, the Commission adopted the position of WWP to reduce the number of blocks in its commercial and industrial tariffs. The Commission stated in its third supplemental order:

> Counsel for the public and intervenors [POWER] recommended elimination of the commercial and industrial declining blocks. The record in this case does not support such a modification, but the Company is directed in its next general rate filing to show why any declining energy charge should be maintained.

Clerk's Papers, at 196.

As to the issue of a 3–tier inverted baseline/lifeline residential rate design, the Commission adopted the proposal of staff for an inverted baseline rate with price break points at 600 and 1,300 kilowatt–hours of electricity consumption per month. Clerk's Papers, at 196. WWP had initially proposed a single break point at 1,300 kilowatt–hours. Both the special assistant attorney general and POWER concurred with the staff positions.

Given the failure of the plaintiff to call expert witnesses

and the congruity of the views of the Commission staff, the special assistant attorney general, and POWER, we hold POWER was adequately represented in this case.

The trial court is affirmed.

UTTER, BRACHTENBACH, DIMMICK, and PEARSON, JJ., concur.

ROSELLINI, J. (dissenting)—The majority holds that the appointment of Special Assistant Attorney General Ericson satisfies the alternative means requirement of 16 U.S.C. § 2632(b) (Supp. 4, 1980). I disagree.

Congress enacted the Public Utility Regulatory Policies Act of 1978 (PURPA). Title I of PURPA established policies for utilities which sell electricity at the retail level. The purposes of this title are to encourage

1. Conservation of energy supplied by electric and gas utilities;

2. Optimum efficiency in use of facilities and resources by electric utilities; and

3. Establish equitable retail rates for consumers.

PURPA created a federal right of intervention whereby consumers who participate in the procedures are entitled to receive compensation for reasonable attorney fees, expert witness fees, and other reasonable costs incurred in preparation and participation in the case.

This right of compensation can be defeated only if a state or regulatory authority has established an "alternative means" of assuring adequate representation of the persons referenced in subsection (b). 16 U.S.C. § 2632(b) provides:

(b) Alternative means

Compensation shall not be required under subsection (a) of this section if the State, [or] State regulatory authority . . . has provided an alternative means for providing adequate compensation to persons—

(1) who have, or represent, an interest—

(A) which would not otherwise be adequately represented in the proceeding, and

(B) representation of which is necessary for a fair

determination in the proceeding, and

(2) who are, or represent an interest which is, unable to effectively participate or intervene in the proceeding because such persons cannot afford to pay reasonable attorneys' fees, expert witness fees, and other reasonable costs of preparing for, and participating or intervening in, such proceeding (including fees and costs of obtaining judicial review of such proceeding).

The key to this section is the phrase "adequately represented" in subpart (1)(A). If the state has not provided for adequate representation of the persons referenced in the statute, subsection (b) will not work to defeat PURPA compensation claims.

Here, Donald Ericson, a private attorney, was appointed as special assistant attorney general for the purpose of representing the people of the state of Washington. The sole question then is whether Special Assistant Attorney General Ericson's participation was an "alternative means" as required under PURPA. The authority to hire, for consultation and to testify, is critical to a finding of alternative means.

The majority admits that

effective public participation in utility regulatory proceedings depends largely on the consumer advocate's ability to employ expert witnesses to testify on behalf of residential consumers in utility proceedings. Without technical resources sufficient to match those of the utility companies they oppose, consumer advocates will become little more than nominal representatives of the public interest.

(Citations omitted.) Majority opinion, at 294. The majority then quotes the pertinent statutory provisions, RCW 43.10-.060 and .125, and holds "the special assistant attorney general has sufficient statutory authority to be an appropriate alternate means of representation". Majority opinion, at 295. That holding ignores the issue in this case—whether *this* special assistant attorney general had *actual* authority to hire such witnesses. If—as I conclude—he did not, compensation must be granted, since one cannot defeat

PURPA compensation claims by urging that *generally* special assistant attorneys general have such authority. Even if the statute is interpreted as allowing a special assistant attorney general to hire expert witnesses, alternative means did not exist unless *this* special assistant attorney general had authority. Ericson's ability to do so depends on the specific circumstances under which he was appointed, as well as the financing available to hire such witnesses. The clear evidence in this case demonstrates that Ericson could not hire expert witnesses.

First, Special Assistant Attorney General Ericson did not believe he had the authority to hire expert witnesses. His affidavit states:

> I was not vested with any authority to and did not retain any outside experts or consultants with respect to the issues raised in the case, nor was I authorized to retain independent staff people to provide assistance in preparing for and participating in the case.

Clerk's Papers, at 343.

Second, he had no authorization to do so. The letter confirming Mr. Ericson's appointment does not state that he could hire witnesses. It provides only that Mr. Ericson will be compensated at $60 per hour and that he would be compensated for "reasonable and necessary out–of–pocket expenses incurred." Exhibit D. No mention is made of expert witness fees.

Also, virtually the entire budget was consumed by the special assistant attorney general fees. Thus, no funds would have been available to hire expert witnesses had Mr. Ericson believed he had the power to do so.

Consequently, I believe the evidence amply illustrates that Ericson could not hire expert witnesses. In addition, I believe the majority's conclusion as to statutory authority is erroneous. Certainly it is contrary to the position taken by this state's Attorney General.

Attorney General Eikenberry's subsequent attempts to have legislation which specifically granted broad powers to these special assistant attorneys general demonstrate this

point. For instance, the Attorney General, in his remarks before the House Ethics, Law and Justice Committee, explained that because of lack of authority, the lawyers who have been representing the public assigned by his office have "been functioning as lawyers more or less with their hands tied behind their backs." Brief of Appellant, app. A. The Attorney General's response to the problem was to request the introduction of legislation which specifically authorized the Attorney General to specially appoint assistants as may be necessary to fulfill the responsibilities before the Washington Utilities and Transportation Commission in contested cases, hire consultants and employ technical assistants.

In fact, the Attorney General offered the following testimony on behalf of his House Bill 1091:

> [T]he guts of the bill is in the proposal that the Legislature take a new tack and give us funding so that we may retain technical consultants who can go in and give our lawyers a backup with the analytical ability that we need to really analyze what's being presented to the Commission. I think, I know that the other witness who has spoken to you would agree that no matter how good the lawyer is, *if they don't have the expert witness they can call on to present and help make the record, they're not going to get very far.*

(Italics mine.) Brief of Appellant, app. A. Statements of Attorney General Kenneth O. Eikenberry, House Committee on Ethics, Law and Justice, February 9, 1982, 47th Legislature.

Under these circumstances, I cannot agree that Special Assistant Attorney General Ericson had the necessary actual or statutory authority and resources contemplated by PURPA's alternative means requirement. I believe, therefore, the case should be remanded for trial to award attorney fees.

WILLIAMS, C.J., and STAFFORD and DORE, JJ., concur with ROSELLINI, J.

Reconsideration granted September 30, 1983.