[No. 48413–9.  En Banc.  July 26, 1984.]

POWER, *Appellant,* v. THE WASHINGTON WATER POWER COMPANY, *Respondent.*

*James A. Bamberger,* for appellant.

*Paine, Hamblen, Coffin & Brooke,* by *David J. Meyer,* for respondent.

*Paul G. Cornelius* and *Kenneth E. Reeves* on behalf of National Consumer Law Center, amici curiae for appellant.

DOLLIVER, J.—Upon reconsideration of *Power v. Washington Water Power Co.*, 99 Wn.2d 289, 662 P.2d 374 (1983), we affirm with the following modifications.

The majority in *Power* erroneously determined that POWER did not employ expert witnesses or technical consultants. POWER in fact did hire several experts. Although these witnesses did not testify, they were used to assist in the preparation of both the technical aspects of cause U–80–13 (Washington Utilities and Transportation Commission v. The Washington Water Power Company) before the Washington Utilities and Transportation Commission (WUTC) and the cross examination of the witnesses of respondent Washington Water Power Company (WWP). Statements to the opposite effect should be deleted. 99 Wn.2d at 291, 296, 297.

In 99 Wn.2d at 295, the first sentence of the second full paragraph should read: "To meet the requirements of PURPA, public counsel must be: (1) independent of the *State's* regulation authority . . ." The original sentence was incorrectly worded "statute's".

On reconsideration, POWER does not challenge our conclusion that a special assistant attorney general has the statutory authority to hire expert witnesses and outside consultants. *Power,* 99 Wn.2d at 292–96; RCW 43.10.080 and RCW 80.20.020. Rather, POWER argues Special Assistant Attorney General (SAAG) Ericson, in this particular case, did not adequately provide "alternative means" for assuring representation of utility consumers. Additionally, POWER states it substantially contributed to regulatory hearing cause U–80–13 and did not merely duplicate efforts of public counsel.

Under 16 U.S.C. § 2632(a) (*see* Public Utility Regulatory Policies Act of 1978 (PURPA), 16 U.S.C. §§ 2601–45 (Supp. 4, 1980)), if there are no alternative means for assuring representation of electric consumers, utilities are

required to compensate consumers who substantially contribute to partial or total approval of a position advocated by such consumer. Although several experts were employed by POWER, there is no verifiable evidence that any position adopted by the Commission was substantially contributed to by POWER's efforts. *See Re S. Cal. Edison Co.*, 45 Pub. Util. Rep. 4th 217 (Cal. Pub. Utils. Comm'n 1981) (procedural mechanism adopted in California to determine whether a consumer has substantially contributed, in whole or in part, to an adopted PURPA position). Moreover, in cause U–80–13, the record before the court indicates SAAG Ericson and POWER advocated congruous positions. *Power*, 99 Wn.2d at 297.

The California Public Utilities Commission, in seeking to prevent a participant from duplicating positions taken by staff or other parties (45 Pub. Util. Rep. 4th at 231), excludes "compensation merely for creative or meritorious efforts", 45 Pub. Util. Rep. 4th at 219, and "for participants whose position is viewed sympathetically, but not adopted." 45 Pub. Util. Rep. 4th at 233. We concur with these views. Consumers who intervene should receive compensation for attorney fees and costs when there are no alternative means and their efforts have substantially contributed to a PURPA proceeding in accordance with 16 U.S.C. § 2632(a)(1). When there is no substantial contribution to an actual commission decision or order, however, ratepayers' money—which provides the funds for alternative representation—should not and may not be expended.

Upon reconsideration, we again hold SAAG Ericson, in this particular case, provided an alternative means of representation for electric consumers. No new information has come to us to change our view expressed in *Power v. Washington Water Power Co., supra,* that adequate representation for consumers was given either by the commission staff or by the SAAG. As to POWER's contributions to the hearings before the WUTC, while they may be regarded as helpful, there is nothing in the record to indicate they rise to the level of a substantial contribution required by

statute.

Affirmed.

UTTER, BRACHTENBACH, DIMMICK, and PEARSON, JJ., concur.

ROSELLINI, J. (dissenting)—Once again, this case comes before this court—and, once again, a majority of its members ignore the clear intent contained in the alternative means requirement of 16 U.S.C. § 2632(b) (Supp. 4, 1980). The majority thus denies a consumer group, whose actions "substantially contributed to the outcome in this proceeding", their rightful fees. With this result, I disagreed in *Power v. Washington Water Power Co.,* 99 Wn.2d 289, 662 P.2d 374 (1983) and, with this result, I disagree now.

Although I do not intend to repeat my entire dissent in *Power* here, I must point out the two areas in which I disagree with the majority.

First, in *Power,* this court recognized the importance of expert witnesses and concluded that, generally, special assistant attorneys general have authority to hire expert witnesses. That position ignored the questions then before the court, that is, Was Special Assistant Attorney General Ericson so empowered? and, Was he aware of this power? Both the affidavits and the fact that Ericson did not hire experts established the fact that he did not so believe. The majority then slipped over that evidence and concluded— incorrectly—that POWER could not complain of the lack of experts because they themselves had hired none. *Power,* at 296. On motion for reconsideration, POWER pointed out the majority's error and reconsideration was granted. Instead of confronting its error and overruling *Power,* the majority now asserts that the trial record does not establish that POWER substantially contributed to the outcome of the proceedings. This conclusion, as that of *Power,* is erroneous.

While Ericson neither called nor hired any expert witnesses, POWER employed three.

First, POWER employed Rudolph L. Bertschi, assistant director of Illinois Office of Consumer Services. Mr. Bertschi testified concerning the propriety of allowing utility companies current cash return on construction in progress. Second, POWER employed, as a consultant, a resource economist who helped develop POWER's cross examination regarding Washington Water Power's prefiled direct testimony. Third, POWER retained the services of an economist who assisted POWER's attorneys in evaluating cost-of-service evidence. This assistance allowed POWER's attorneys to establish, through cross examination, that Washington Water Power had an improper method of allocating costs between demand and energy.

Special Assistant Attorney General Ericson, on the other hand, did not even address this issue. Yet, as pointed out by appellant, this issue resulted in the Utilities and Transportation Commission's rejection of the utility's cost-of-service study.

The majority ignores the evidence contained in the records and neglects to address appellant's arguments. Instead, it opines that there is "no verifiable evidence that any position adopted by the Commission was substantially contributed to by POWER's efforts." Majority opinion, at 262. This conclusion not only conflicts with the evidence discussed above, it also is logically unsupportable. The issues presented in utility cases are complex and the evidence is highly technical. The majority asks us to believe, despite this fact, that a lawyer, schooled principally in substantive law and advocacy, can step into a hearing, unassisted by consultants in the subject area, and effectively cross-examine the company's witness. No practicing attorney would take such a risk with his own client; PURPA (Public Utility Regulatory Policies Act of 1978) is intended to forbid him from doing so when the client is the public.

Finally, I must also express my concern regarding the majority's uncritical adoption of the special assistant attorneys general scheme as an appropriate alternative means. The majority appears to assume that because some public

official is representing the "public", the alternative means requirement has been met. The legislative history belies this fact. Congress intended that the alternative means requirement be met by an adequately funded, independent representative. I believe the special assistant attorneys general system does not provide sufficient autonomy from the State's regulatory authority. Hired by the State and working in close association with the regulatory commission, the special assistant attorney general cannot help but be influenced by that environment. I believe a separate department or a truly autonomous attorney who develops litigation strategy with local consumer groups and experts in the field would be a better means of implementing the public policy inherent in the alternative means requirement. For this reason, and the one discussed above, I dissent.

WILLIAMS, C.J., and DORE, J., concur with ROSELLINI, J.