OPINION OF THE COURT
John P. Balio, J.
The plaintiffs were consumers of electric power provided by the defendant utility. In 1977, defendant applied for an electric rate increase. Prior to the conclusion of proceedings before the New York Public Service Commission (PSC) on that request, Niagara Mohawk sought another rate increase. In 1979, plaintiffs intervened in the second rate case and were represented by the Public Utility Law Project (PULP) and the Legal Aid Society of Oneida County, Inc., both publicly funded law firms.[1] During the rate proceedings, PULP actively participated in the presentation of expert testimony and cross-examination of experts presented by other parties. Upon conclusion of the proceedings, PULP sought, and received, a declaration from the PSC that it *958 substantially contributed to the PSC’s adoption, in part, of plaintiff’s position on marginal cost pricing in fixing defendant’s rate schedule. Plaintiffs then commenced this action to recover the costs of intervening in the rate proceedings.
This is the first opportunity of the courts of this State to consider the right of a consumer to recover the costs (for example, attorney fees, disbursements, expert witness fees) of intervening in electric power rate proceedings under Public Utility Regulatory Policies Act of 1978 § 122 (PURPA; 92 US Stat 3117).[2] This section was enacted to provide some mechanism to *959 assure the representation of electric consumer interests in State administrative proceedings. (See, House Conference Report No. 95-1750,1978 US Code Cong & Admin News, at 7816-7817.) If a State, its regulatory authority or nonregulated utility provides a means for providing adequate compensation for persons having an interest in rate proceedings, the statute limits consumer intervenors to that method of compensation. If such an “alternative means” is not provided, PURPA imposes a liability upon the electric utility involved in the rate proceeding to compensate consumers for the costs of intervention if the intervenor’s efforts substantially contributed to approval of the intervenor’s position on certain rate standards. The intervention costs may be recovered in one of two ways. PURPA authorizes regulatory authorities (or nonregulated utilities) in each State to adopt procedures for the determination and award of fees and costs. If no administrative procedure is established, then an action may be instituted in a State court of appropriate jurisdiction.
The parties each seek summary judgment in their favor with respect to liability. Plaintiffs also seek the imposition of discovery sanctions.
ALTERNATIVE MEANS
The present action cannot proceed if the State or the PSC has provided an alternative means for the compensation of the costs of intervention.
At the outset, the court observes that “compensation” may be supplied in the form of representation. While a literal reading of PURPA § 122 suggests that “adequate compensation” is the means, it is clear that Congress intended that such compensation could be provided by actual representation of consumer interests. (See, House Conference Report No. 95-1750, 1970 US Code Cong & Admin News, at 7817.)
The PSC has not created an alternative means in either form. Although the staff and counsel for the PSC are empowered to act on behalf of the people of the State (see, Public Service Law §§ 8, 12), defendant makes no claim that they constitute an alternative means as intended by PURPA. (See also, in this respect, Re and *960 Costs of Participation in Elec. Rate-Making Proceedings, 37 PUR 4th 259, 265-266 [Cal PUC 1980]; Re Compensation to Intervenors in Elec. Rate-Making Proceedings, DE 80-182 [NH PUC, Sept. 8, 1981].) Rather, it is defendant’s contention that the State Consumer Protection Board (CPB) constitutes the alternative means.
The CPB was created in 1970, and its executive director was generally empowered to represent consumer interests before regulatory agencies. (See, Executive Law § 553 [3] [d].) In 1974, the executive director was given the duty to intervene in rate proceedings before the PSC. (L 1974, ch 650.) During 1979, some $500,000 was budgeted specifically for the utility intervention program, exclusive of some Federal grant moneys for rate design research. According to Rosemary S. Pooler, then the CPB Executive Director and now a PSC Commissioner, her office was never adequately funded to fully represent all consumers, and inherent conflicts arose between the interests of various consumers (low income, small business, residential, industrial, environmental, pro and antinuclear) that required the CPB to advocate a compromise or consensus position and precluded representation of the significant interest of a particular consumer group.
The statute (16 USC § 2632 [b] [1] [A]) requires that the alternative means provide adequate compensation (representation) to persons having an interest “which would not otherwise be adequately represented in the proceeding”. Hence, the existence of an alternative means can only be determined by reviewing the facts and circumstances of each proceeding as well as the interest to be represented in that proceeding. Although the Pooler affidavit speaks in general terms and is not related to the second rate case at issue here, the factors discussed by Commissioner Pooler — adequacy of funding and inherent conflicts — are relevant criteria which the court must consider. An adequately funded office of public counsel, or in New York’s instance, the CPB, may constitute an alternative means. However, due attention must be given to the particular interest the consumer seeks to advocate in a given case and the interest advanced by the CPB in that case to ascertain whether there is sufficient similarity for adequate representation. (See, Power v Washington Water Power Co., 99 Wn 2d 289, 662 P2d 374 [a 5-4 decision], affd on reconsideration 102 Wn 2d 260, 684 P2d 716 [also a 5-4 decision].) If both advance the same position, then an alternative means exists regardless of the effort and quality of advocacy proffered. (Supra.)
The evidentiary material before the court on the issue of alternative means does not relate especially to the second rate *961 case. Therefore, summary judgment is not warranted on that issue.
The court additionally notes in passing that PULP’s receipt of some $1,462 from a subdivision of the State does not render such largesse an adequate alternative means. Defendant’s suggestion to the contrary is ludicrous.
SUBSTANTIAL CONTRIBUTION BY CONSUMERS
Defendant does not seriously dispute plaintiffs’ assertion that they (United Tenants of Albany, Inc., and Reynolds) are electric consumers as defined by PURPA (16 USC § 2602 [5]). The PSC has additionally determined that PULP substantially contributed to the adoption of certain rate standards.[3] Defendant has not sought any judicial review of that determination. Plaintiffs are entitled to summary judgment on those issues.
ELIGIBILITY OF PUBLICLY FUNDED LAW FIRMS
Defendant utility urges that the plaintiffs are not entitled to intervenor costs because they did not incur any expenses and would not suffer any significant financial hardship absent a fee award. Essentially, the defendant claims that publicly funded law firms are not entitled to fee awards under PURPA.
Any requirement that the consumer must actually incur an expense for which compensation is recoverable would effectively eliminate low-income consumers from relief under PURPA § 122. Defendant’s construction of the statute is unreasonable and contrary to congressional intent. A cursory review of section 122 reveals that it is designed to assure representation of persons who “cannot afford to pay” the costs of intervention. (16 USC § 2632 [b] [2].)
Further, this court cannot subscribe to the view that Congress did not intend publicly funded law firms to be eligible for a fee award. Defendant bases this assertion upon the statutory language requiring a consumer to demonstrate that absent a fee award, the consumer may suffer significant financial hardship. Since the consumer who retains the services of a publicly funded law firm would not suffer any financial hardship, defendant theorizes that Congress did not intend that firms such as PULP be eligible for a fee award. This contention misses the mark.
First, the standard purportedly mandating that a consumer demonstrate financial hardship applies only to fee compensation *962 procedures adopted by a State regulatory authority or nonregulated utility. No standards are prescribed for court awards.
Second, the statute (16 USC § 2632 [a] [3] [A]) states that the authority or utility may require a demonstration of significant financial hardship as a condition to compensation. It is, therefore, evident that Congress permitted each authority or utility to make its own policy determination on the inclusion of such a standard.
Third, the standard, if applied, is to be applied to preliminary proceedings held before any expenses are incurred. The court’s determination is made only after substantial fees or costs are incurred or generated.
Lastly, defendant cites as authority the determinations of Public Utility Commissions in five States that either expressly or impliedly deny compensation to consumers represented by publicly funded law firms. Each determination,[4] however, involves the adoption of preliminary procedures and not an award of costs after the fees have been generated and costs incurred. Another determination, not cited by defendant, would allow compensation to publicly funded consumers. (See, Re Procedure for Compensation of Elec. Consumers, 38 PUR 4th 127 [Alaska PUC 1980].) See also, Power v Washington Water Power Co. (supra), which did not affirmatively decide that publicly funded law firms are eligible for compensation, but apparently would have allowed such compensation in the absence of an alternative means. The court has reviewed the adopted procedures in four States (California, Maine, New Hampshire and Wisconsin) and can find no per se exclusion of publicly funded law firms. Indeed, publicly funded consumer organizations may receive compensation provided that they have not received funds specifically for intervention in PURPA proceedings.
This court concludes that adoption of a standard that would disqualify publicly funded law firms from the receipt of fee awards and costs of intervening in rate proceedings is not in the best interest of electric consumers of this State nor consonant *963 with public policy. Public funds for legal services are not available in infinite quantity. Those firms who provide legal services to the poor do not have the public funds to serve all who ask. Priorities of service must be established based upon several factors. Clearly, the likelihood of compensation from an outside source would encourage such a firm to represent a client in that service area. Stated differently, the knowledge that a source of funds is not available might lower the position of such cases on the priority and cause the firm to intervene in • less costly (perhaps less important) rate proceedings. The adoption of a per se standard barring compensation for those represented by publicly funded law firms would reduce, perhaps eliminate this source of representation for low-income consumers.
Who would, then, represent the low-income consumer? If the preliminary administrative procedure was in place, a consumer would know, prior to the rate hearings, if an attorney would be compensated. However, the Public Service Commission did not adopt that procedure. As a result, the consumer does not know until a conclusion of the rate proceedings whether the attorney or expert witness will be compensated. Hence, the attorney and witnesses must expend all of their time and expense with no assurance that they will be eligible for compensation. A review of the number of hours and expense dedicated to this intervention by plaintiffs indicates that, as a practical matter, consumers would be limited in their selection to the few firms that could afford such time and energy on a pro bona basis and who have members or associates with the necessary expertise to represent consumers in this type of proceeding. Additional difficulty could be experienced in locating such a firm that does not have a conflict of interest, either because it represents the utility in some respect or it represents other utilities. Congress could not have intended that consumers be faced with this hurdle, nor will the court impose such an obstacle.
Therefore, the court finds that plaintiffs are entitled, if no alternative means existed, to be compensated for the reasonable attorney fees generated by PULP, disbursements, expert witness fees, and other reasonable costs allowed by statute.
REASONABLE ATTORNEY FEES
Plaintiffs seek, in addition to a per hour rate of compensation, an incentive award of 15% of allowable attorney fees, in essence, a fee on a fee, in recognition of the complexity of the case, the monetary benefits accrued by low-use consumers, and the risk that plaintiffs’ position would not be approved.
*964 The reasonableness of attorney fees is an issue of fact that cannot be resolved by reviewing the papers before the court. Although the court has serious doubts that an incentive award can be, or should be, made under PURPA, this issue should be resolved at the time of trial. The court does note, however, that any award of intervention costs should be reduced by the sum of $1,462.68, which was received from Oneida County specifically for intervention in the second rate case.

. The plaintiff, Gloria Brindisi Monaco, was represented by the Legal Aid Society. The present action seeks to recover attorney fees and expert witness fees incurred by PULP. Since Monaco never retained PULP, defendant is entitled to summary judgment dismissing any claim asserted by Monaco.

. This section is codified at 16 USC § 2632 and, to the extent relevant here, provides:
“(a) Compensation for costs of participation or intervention
“(1) If no alternative means for assuring representation of electric consumers is adopted in accordance with subsection (b) of this section and if an electric consumer of an electric utility substantially contributed to the approval, in whole or in part, of a position advocated by such consumer in a proceeding concerning such utility, and relating to any standard set forth in subchapter II of this chapter, such utility shall be liable to compensate such consumer (pursuant to paragraph (2)) for reasonable attorneys’ fees, expert witness fees, and other reasonable costs incurred in preparation and advocacy of such position in such proceeding (including fees and costs of obtaining judicial review of any determination made in such proceeding with respect to such position).
“(2) A consumer entitled to fees and costs under paragraph (1) may collect such fees and costs from an electric utility by bringing a civil action in any State court of competent jurisdiction, unless the State regulatory authority (in the case of a proceeding concerning a State regulated electric utility) or nonregulated electric utility (in the case of a proceeding concerning such nonregulated electric utility) has adopted á reasonable procedure pursuant to which such authority or nonregulated electric utility —
“(A) determines the amount of such fees and costs, and
“(B) includes an award of such fees and costs in its order in the proceeding.
“(3) The procedure adopted by such State regulatory authority or nonregulated utility under paragraph (2) may include a preliminary proceeding to require that —
“(A) as a condition of receiving compensation under such procedure such consumer demonstrates that, but for the ability to receive such award, participation or intervention in such proceeding may be a significant financial hardship for such consumer, and
, “(B) persons with the same or similar interests have a common legal representative in the proceeding as a condition to receiving compensation.
“(b) Alternative means
“Compensation shall not be required under subsection (a) of this section if the State, the State regulatory authority (in the case of a proceeding concerning a State regulated electric utility), or the nonregulated electric utility (in the case of a proceeding concerning such nonregulated electric utility) has provided an alternative means for providing adequate compensation to persons
“(1) who have, or represent, an interest —
“(A) which would not otherwise be adequately represented in the proceeding,
*959 “(B) representation of which is necessary for a fair determination in the proceeding, and
“(2) who are, or represent an interest which is, unable to effectively participate or intervene in the proceeding because such persons cannot afford to pay reasonable attorneys’ fees, expert witness fees, and other reasonable costs of preparing for, and participating or intervening in, such proceeding (including fees and costs of obtaining judicial review of such proceedings).”

. The court notes that PULP’s decision to obtain a PSC determination on the issue of substantial contribution was most prudent and should be followed by other intervenors. The PSC is in the best position to make such a determination.

. (Re Costs of Participation in Elec. Rate-Making Proceedings, 37 PUR 4th [Cal PUC 1980]; Re Compensation for Consumer Intervenors in PURPARelated Proceedings, case No. P-300-10, order No. 15121 [Idaho PUC, Nov. 30, 1979]; Re Costs of Participation in Commn. Proceedings on PURPA, 37 PUR 4th 280 [Me PUC 1980]; Re Compensation to Intervenors in Elec. Rate-Making Proceedings, DE 80-182 [NH PUC, Sept. 8, 1981]; Re Investigation by the Commn. into Rules Regarding Compensation of Consumer Interests in Util. Proceedings, l-AC-30 [Wis PSC, Oct. 19, 1982].) As was noted by defendant’s counsel, the Idaho determination has been vacated. (See, Matter of Idaho Power Co. v Idaho Public Util. Commn., 102 Idaho 744, 639 P2d 442.)