**UTAH STATE COALITION OF SENIOR CITIZENS, Utility Consumer Action Group, Salt Lake Community Action Program, Utah Issues Information Program, Utah Welfare Rights Organization, and Crossroads Urban Center, Plaintiffs and Appellants,**

v.

**UTAH POWER AND LIGHT COMPANY, Defendant and Appellee.**

No. 20152.

Supreme Court of Utah.

June 12, 1989.

Bruce Plenk, Salt Lake City, for plaintiffs and appellants.

Robert Gordon, David Lloyd, Edward Hunter, Salt Lake City, for defendant and appellee.

ZIMMERMAN, Justice:

Plaintiffs are several nonprofit organizations that represent elderly or low-income consumers of electric power. These groups include the Utah State Coalition of Senior Citizens, the Utility Consumer Action Group, the Salt Lake Community Action Program, the Utah Issues Information Program, the Utah Welfare Rights Organization, and the Crossroads Urban Center. Defendant Utah Power and Light Company ("UP & L") is a regulated electric utility.

In November of 1979, plaintiffs petitioned the Utah Public Service Commission ("PSC") to issue a moratorium on all involuntary utility service terminations during the winter months and initiate rule-making proceedings to establish rules regarding winter termination of utility service by all utilities under the jurisdiction of the PSC. A series of hearings was held in December of 1979 and April and August of 1980. In February of 1981, the PSC adopted rules on the subject, which were clarified in May of 1981.[1] In May of 1982, plaintiffs petitioned the PSC for an award of attorney fees under the federal Public Utility Regulatory Policies Act ("PURPA"). *See* Public Utility Regulatory Policies Act of 1978, Pub.L. No. 95–617, 92 Stat. 3117, § 122, 16 U.S.C. § 2632 (1982). The PSC denied the

---

**1.** The regulations adopted by the PSC concerned modifications of the Utah Residential Utility Service Regulations. These modifications, inter alia, prohibited utilities from terminating service to a residence where life-sustaining equip-ment was used, expanded the medical emergency restriction on termination of service, and required utilities to include additional information in termination notices.

petition in July of 1982. Plaintiffs then brought this original action against UP & L in district court under the same statute. Plaintiffs claimed they satisfied the statutory requirements for an award of attorney fees, to wit: (i) that no "alternative means for assuring representation" of plaintiffs before the PSC was provided by the State and (ii) that plaintiffs' participation had substantially contributed to the adoption by the PSC of rules on winter terminations. PURPA, § 122(a)(1); 16 U.S.C. § 2632(a)(1) (1982). UP & L opposed the request and filed a motion for summary judgment. The trial court granted the motion without opinion and dismissed the action. Because we find that a statutory "alternative means" was not provided, we reverse on that issue and remand for further proceedings on the second question—whether plaintiffs' participation "substantially contributed" to the PSC's adoption of the position they advocated.

A grant of summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c). *Geneva Pipe Co. v. S & H Ins. Co.,* 714 P.2d 648, 649 (Utah 1986). In determining whether the trial court properly found that there was no genuine issue of fact, we view the facts and inferences therefrom in the light most favorable to the losing party. *Id.* at 649. And in deciding whether the trial court properly granted judgment as a matter of law to the prevailing party, we give no deference to the trial court's view of the law; we review it for correctness. *Ron Case Roofing and Asphalt Paving, Inc. v. Blomquist,* 773 P.2d 1382, 1384–85, (Utah 1989).

In this Court, the positions of the parties mirror their positions below. Plaintiffs claim they are entitled to attorney fees because they have satisfied the two requirements of section 122 of PURPA, to wit: that no "alternative means for assuring representation of electric consumers"

before the PSC was provided by the state and that plaintiffs had substantially contributed to a position adopted by the PSC after hearings. In response, UP & L claims that the participation in the hearings of two state agencies, the Division of Public Utilities and the Committee of Consumer Services, provided the "alternative means" required by the statute and, therefore, plaintiffs' claim is barred. UP & L also contends that the district court did not have jurisdiction to consider plaintiffs' challenge to the PSC's denial of the fee request because at the time this action arose, section 54–7–16 of the Code vested in this Court exclusive jurisdiction over all attacks on PSC orders. Even if plaintiffs are entitled to their costs of participation in the hearings, UP & L contends that it is unfair to burden it with that entire cost because several other utilities were also involved in those hearings.

This case involves a somewhat complicated federal statutory scheme; therefore, some introduction to PURPA is required. In November of 1978, Congress enacted PURPA, in part to encourage energy conservation and to provide equitable retail rates for electricity consumers. The statute accordingly set out rate-making and utility service standards designed to further this purpose. Although Congress favored certain changes in the regulation of public utilities, it did not attempt to abrogate traditional state control of utility regulation by imposing these changes directly on local utilities. Therefore, it required that each state's regulatory authority hold public hearings to determine whether any or all of the proposed standards relating to utility service enumerated in PURPA should be adopted.[2] *See* PURPA, § 113, 16 U.S.C. § 2623 (1982). PURPA required that the hearings be completed and the standards adopted or rejected within two years. *Id.*

While the states were not required to adopt the PURPA standards, Congress wanted to ensure that the viewpoints of all

---

**2.** It was one of those standards—a prohibition on the termination of electric service without notice or, in any event, if the consumer's health

was endangered—that plaintiffs intervened to promote. *See* 16 U.S.C. §§ 2623(b)(4), 2625(g) (1982).

electricity consumers were adequately represented in state administrative proceedings, including those who might not be able to otherwise afford the costs of participation, which would include costs of retaining counsel and hiring needed experts. Therefore, Congress provided two mechanisms to ensure adequate representation of the views of all affected by the outcome of the hearings. First, if certain criteria were met, an intervenor's costs of representation are reimbursed by the electric utilities involved in the hearings. An intervenor meeting the statutory criteria can recover its costs from the utility either by obtaining an order from the state regulatory authority directing the utility to pay, if the regulatory authority has adopted a procedure for making such awards, or by bringing a civil action in state court against the utility.[3] PURPA, § 122(a)(2), 16 U.S.C. § 2632(a)(2); H.R.Rep. No. 1750, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Admin.News 7659, 7797, 7816-17 [hereinafter H.R.Rep. No. 1750]. Second, the statute provides that the state, the state regulatory authority, or the nonregulated utility (if the proceedings involve a nonregulated utility) can assume the costs of an intervenor's participation by establishing a mechanism either for directly compensating a qualified intervenor for its costs of participation or for directly representing the intervenor in the proceedings via an adequately funded office of public counsel.[4]

Against this background, UP & L's contentions are better understood. It seeks to avoid liability for any of plaintiffs' costs of participation by arguing that the state exercised the option in section 122(b) of PURPA to assume those costs by providing for the participation in the hearings of two state agencies that represent consumers, the Division of Public Utilities and the

---

**3.** Section 122, entitled "Consumer representation," provides in pertinent part:

(a) *Compensation for costs of participation or intervention*

(1) If no alternative means for assuring representation of electric consumers is adopted in accordance with subsection (b) of this section and if an electric consumer of an electric utility substantially contributed to the approval, in whole or in part, of a position advocated by such consumer in a proceeding concerning such utility, and relating to any standard set forth in subchapter II of this chapter, such utility shall be liable to compensate such consumer (pursuant to paragraph (2)) for reasonable attorneys' fees, expert witness fees, and other reasonable costs incurred in preparation and advocacy of such position in such proceeding (including fees and costs of obtaining judicial review of any determination made in such proceeding with respect to such position).

(2) A consumer entitled to fees and costs under paragraph (1) may collect such fees and costs from an electric utility by bringing a civil action in any State court of competent jurisdiction, unless the State regulatory authority (in the case of a proceeding concerning a State regulated electric utility) or nonregulated electric utility (in the case of a proceeding concerning such nonregulated electric utility) has adopted a reasonable procedure pursuant to which such authority or nonregulated electric utility—

(A) determines the amount of such fees and costs, and

(B) includes an award of such fees and costs in its order in the proceeding.

PURPA, § 122(a), 16 U.S.C. § 2632(a) (1982).

**4.** Section 122(b), entitled "Alternative means," provides:

Compensation shall not be required under subsection (a) of this section if the State, the State regulatory authority (in the case of a proceeding concerning a State regulated electric utility), or the nonregulated electric utility (in the case of a proceeding concerning such nonregulated electric utility) has provided an alternative means for providing adequate compensation to persons—

(1) who have, or represent, an interest—

(A) which would not otherwise be adequately represented in the proceeding, and

(B) representation of which is necessary for a fair determination in the proceeding, and

(2) who are, or represent an interest which is, unable to effectively participate or intervene in the proceeding because such persons cannot afford to pay reasonable attorneys' fees, expert witness fees, and other reasonable costs of preparing for, and participating or intervening in, such proceeding (including fees and costs of obtaining judicial review of such proceeding).

PURPA, § 122(b), 16 U.S.C. § 2632(b) (1982). While a literal reading of section 122(b) of PURPA suggests that "adequate compensation" might be the "alternative means" referred to in section 122(a), it is clear that Congress intended that such compensation could be provided by actual representation of consumer interests. *See* H.R.Rep. No. 1750, 1978 U.S.Code Cong. & Admin.News at 7816-17.

Committee of Consumer Services. UP & L contends that this participation constituted the "alternative means for assuring representation" contemplated by the statute and, since plaintiffs' expenditures duplicated the state's, reimbursement should be denied. Plaintiffs contend that neither state agency's participation in the hearings constituted an "alternative means" because both agencies were incapable of adequately representing plaintiffs' interests.

■ The question of when publicly funded counsel will constitute an adequate "alternative means for assuring representation" sufficient to bar an intervenor's claim for an award of attorney fees under PURPA has never been addressed in Utah. In other states, two different approaches have emerged. The first, termed a "case-by-case approach," originated in the New York courts. Under this approach, the mere fact that a publicly funded counsel appears in a PURPA hearing does not mean that the state has satisfied the alternative means option. The New York courts require that there be a particularized inquiry in each case into the adequacy of the counsel's funding and the existence of conflicts among the various interests it represented. In the absence of adequate funding or in the presence of conflicts, a public counsel does not constitute an "alternative means for assuring representation" and does not preclude the recovery of an intervenor's costs. *See United Tenants of Albany, Inc. v. Niagara Mohawk Power Corp.*, 127 Misc.2d 957, 960, 487 N.Y.S.2d 467, 471 (N.Y.Sup.Ct.1984), *aff'd*, 115 A.D.2d 978, 497 N.Y.S.2d 1019 (N.Y.App. Div.1985); *accord Rodriguez v. Orange and Rockland Utils., Inc.*, 123 A.D.2d 613, 506 N.Y.S.2d 888 (N.Y.App.Div.1986).[5]

The second approach to determining what constitutes the provision of an "alternative means for assuring representation" has been termed a "per se" approach and originated in the Washington courts. *See POWER v. Washington Water Power Co.*, 99 Wash.2d 289, 295, 662 P.2d 374, 378 (1983), *aff'd and modified on rehearing*, 102 Wash.2d 260, 684 P.2d 716 (1984). In *POWER*, the Washington court rejected the contention that conflicts among classes of ratepayers require that different classes with particular viewpoints receive separate representation. Under this approach, participation by a special assistant attorney general per se satisfies the PURPA alternative means criteria so long as the counsel is independent of the state's regulatory authority, empowered to appear and participate in any regulatory or judicial proceeding, authorized to retain outside experts and consultants in particular cases, and authorized to hire and retain sufficient staff. 99 Wash.2d at 295, 662 P.2d at 378.[6]

We conclude that the case-by-case approach of the New York courts should be followed here. We cannot accept the Washington view that conflicts of interest are unimportant. The mere fact that public counsel participates does little to ensure that counsel has not been forced to water down presentation of the views of one constituency in order to represent the views of another. Also, the per se approach results

**5.** For example, in *United Tenants of Albany, Inc. v. Niagara Mohawk Power Corp.*, 127 Misc.2d 957, 960, 487 N.Y.S.2d 467, 471 (N.Y.Sup.Ct. 1984), *aff'd*, 115 A.D.2d 978, 497 N.Y.S.2d 1019 (N.Y.App.Div.1985), the court decided that the New York Consumer Protection Board did not provide an alternative means because it was inadequately funded and because it faced inherent conflicts among the various interests of the consumers it represented (low income, small business, residential, industrial, environmental, pro– and anti-nuclear) "that required it to advocate a compromise or consensus position and precluded representation of the significant interest of a particular consumer group."

It is worth noting that the New York court was unwilling to compel utilities to compensate intervenors if the intervenors' position coincided with one presented by the office of public counsel, even if the office did not constitute an "alternative means." *United Tenants of Albany*, 127 Misc.2d at 960–61, 487 N.Y.S.2d at 471–72. This approach seems to be sound and a logical extension of the policy of PURPA not to encourage duplicative publicly funded advocacy. *See* Re Costs of Participation in Electric Rate–Making Proceedings, 37 Pub.Util.Rep. 4th (PUR) 259, 273 (1980).

**6.** The Washington court's position in *POWER* has been criticized. *See* Note, *Consumer Representation at PURPA Hearings*, 20 Gonz.L.Rev. 567 (1984/85) (advocating the case-by-case approach).

in denying reimbursement to any intervenor, no matter how effective an advocate and no matter how much it contributed to the adoption of a PURPA standard, so long as some publicly funded counsel appeared. Such a result is entirely inconsistent with the public participation provisions in section 122 of PURPA. The New York courts' view of the issue is more likely to ensure that PURPA's purposes are carried out and that the broadest spectrum of views on the PURPA standards are presented vigorously to the regulatory agency.

The next question is whether the participation of either the Division of Public Utilities ("Division") or the Committee of Consumer Services ("Committee") provided plaintiffs with an adequate "alternative means for assuring representation." By statute, the Division is charged to "act in the public interest." Utah Code Ann. § 54–4a–6 (1986). However, the "public interest" is defined as including, for example, the provision of "just, reasonable, and adequate rates, charges, classifications, rules, regulations, practices, and services of public utilities." Utah Code Ann. § 54–4a–6(2). The terms "just, reasonable, and adequate" are, in turn, defined to include, inter alia, the maintenance of "the financial integrity of public utilities by assuring a sufficient and fair rate of return" and "fair apportionment of the total cost of service among customer categories and individual customers [to] prevent undue discrimination in rate relationships." Utah Code Ann. § 54–4a–6(4)(a), (d). The Division was represented at the PURPA hearings by Assistant Attorney General Craig Rich. Mr. Rich assisted witnesses from the Division in testifying on the PURPA standards. He also cross-examined witnesses, including some called by plaintiffs.

The other state agency represented at the hearings was the Committee of Consumer Services. Its statutory duty is to serve as an advocate for positions "most advantageous to a majority of residential consumers ... and those engaged in small commercial enterprises." Utah Code Ann. § 54–10–4(3) (1986). The Committee is directed by a six-person board that must consist of at least one low-income resident, one retired person, one small commercial consumer, one farmer or rancher, and one residential customer. These six persons must not only be members of these specified classes, but they must also represent specified geographical and political party interests. Utah Code Ann. § 54–10–2. At the PURPA hearings, the Committee was represented by Special Assistant Attorney General James Barker.

■ With these facts in mind, we can determine whether either of these agencies provided an "alternative means" that would bar an award of attorney fees to plaintiffs. Applying the case-by-case approach of the New York courts, we conclude that they did not. It is true that the Division appears to have been adequately funded to participate in the PURPA hearings; however, its statutory mission requires that the positions the Division takes must reflect consideration of the financial health of the utilities and the fair apportionment of costs among all customers. It would be impossible to take these factors into account and still zealously represent the interests of the elderly and low-income intervenors here. These conflicts of interest preclude a finding that the Division's participation in the hearings constituted an "alternative means."

As for the Committee, Mr. Barker, who represented the Committee during the PURPA hearings, stated during his deposition that his office was underfunded for utility representation, that it was only on the periphery of the PURPA rule-making issue pressed by plaintiffs, and that there were conflicts between residential consumers on its board who are normally able to pay their utility bills and the low-income intervenors who sometimes are not. These conflicts prevent the Committee's participation in the hearings from constituting "alternative means."

UP & L argues that even if no alternative means of representation has been made available to an intervenor, it is unfair to permit that intervenor to recover its costs of participation in the PURPA hearings if the intervenor only repeated a posi-

tion taken earlier by a state agency before the PSC. The response to this argument is twofold. First, no such situation existed in this case. In November of 1979, plaintiffs, and not the state agencies, petitioned the PSC for a moratorium and rule-making on involuntary terminations of utility service during winter months, a concern directly related to the PURPA standard on termination of service. *See* PURPA, § 115(g), 16 U.S.C. § 2625(g) (1982).

Second, even if an intervenor attempted to unfairly claim attorney fees by repeating a position already fully advocated by a state agency or the utility, PURPA provides a ready remedy. In such a situation, the trial court should deny the claim because the intervenors would not have "substantially contributed" to the regulatory authority's adoption of the position. The "substantially contributed" test is separate from the "no alternative means" test; both must be satisfied before the intervenor is entitled to recover its costs. PURPA, § 122(a)(1), 16 U.S.C. § 2632(a)(1); *see United Tenants of Albany*, 127 Misc.2d at 960–61, 487 N.Y.S.2d at 471–72. Congress intended that in determining whether a party "substantially contributed to the [regulatory authority's] approval, in whole or in part, of [the] position advocated by such consumer," the trial court is to construe the phrase "substantially contributed" broadly. *See* H.R.Rep. 1750, 1978 U.S. Code Cong. & Admin.News at 7817. Such a determination may take into account, inter alia, which party first advocated the position adopted and which party most effectively advocated it. It bears noting that because the test for recovery of costs is two part, the fact that a state agency's participation has been found not to have provided an "alternative means" barring the intervenor's recovery does not mean that agency's participation is ignored. When determining whether the intervenor has "substantially contributed" to the outcome, it is appropriate to consider the state agency's contribution. *See supra* note 5.

■ Having decided that an alternative means for adequately representing plaintiffs' interests did not exist, we now address UP & L's second contention—that after the PSC denied plaintiffs' claim for costs and fees, the proper avenue for relief was an appeal of the PSC's order to this Court rather than an original action in the district court. There is no merit to this claim. It is true that at the time plaintiffs filed their action in district court, appeals of PSC orders were to be taken to this Court under section 54–7–16 of the Code. Utah Code Ann. § 54–7–16 (1986) (repealed 1987). However, plaintiffs' action in district court was an original action authorized by section 122 of PURPA and was not an appeal of the PSC order. As noted above, intervenors may claim attorney fees by one of two alternate methods—filing a civil action in state court or making a claim pursuant to procedures specifically adopted by the state regulatory authority for awarding such fees and costs. PURPA, § 122(a)(2), 16 U.S.C. § 2632(a)(2) (1982). It is clear from the record that the PSC has adopted no procedures for awarding the costs of participation to PURPA intervenors. Therefore, the PSC alternative contemplated by section 122 did not exist. Plaintiffs had every right to proceed in district court.[7]

■ UP & L's last claim is that it is unfair to make it pay any award that might be made to plaintiffs because three other electric utilities were also involved in the PURPA hearings. This claim is also without merit. Section 122 clearly provides intervenors the right to proceed against a single utility if they so desire: "A consumer entitled to fees and costs under paragraph (1) may collect such fees and costs from *an* electric utility...." PURPA, § 122(a)(2), 16 U.S.C. § 2632(a)(2) (1982) (emphasis added). If UP & L thinks that it has an equitable claim for some sort of contribution from the other utilities, it is certainly free to bring them into the action, but plaintiffs are not obligated to do so.

7. Plaintiffs' filing before the PSC was apparently done merely as a housekeeping step taken to preclude UP & L from arguing that plaintiffs

had failed to exhaust their administrative remedies.

We reverse the trial court's grant of summary judgment. Although we have determined that plaintiffs are entitled to proceed against UP & L in district court and that the state has not provided an alternative means for ensuring representation and providing compensation to plaintiffs, a factual question remains: did plaintiffs substantially contribute, in whole or in part, to a position adopted by the PSC? Therefore, the case is remanded for a determination of that issue.

Reversed and remanded.

HALL, C.J., HOWE, Associate C.J., and STEWART and DURHAM, JJ., concur.