SHEILA E. HOWARD & others[1] *vs.* TOWN OF BURLINGTON & others.[2]

Middlesex. December 4, 1986. — April 9, 1987.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Municipal Corporations*, Officers and employees. *Public Employment*, Indemnification of employee. *Massachusetts Tort Claims Act. Agency*, Scope of authority or employment.

At the trial of a ten-taxpayer action seeking to enjoin a town's expenditure of money to defend or indemnify the chairwoman of its finance committee in a defamation action against her, the evidence did not warrant the judge's finding that the chairwoman was not acting in her official capacity at the time of the conversation between her and the town's chief administrative officer in which the allegedly defamatory statements were made. [588-589]

Where the chairwoman of a town's finance committee, in a conversation with the chief administrative officer of the town, related to him that residents of the town had approached her about their suspicions concerning the breakdown of an ambulance immediately after a town meeting rejected a proposal to replace it, the chairwoman's statements, which gave rise to a defamation action against her, fell within the scope of her municipal employment, considered under general principles of respondeat superior, and were protected by the indemnity provisions of the Massachusetts Tort Claims Act, G. L. c. 258, § 9. [589-591]

CIVIL ACTION commenced in the Superior Court Department on May 6, 1985.

The case was heard by *Hiller B. Zobel*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Richard J. Fallon* for the defendants.
*Alan Altman* for the plaintiffs.

---

[1] Eleven other taxable inhabitants of the town of Burlington.

[2] The board of selectmen and the treasurer of Burlington.

LYNCH, J. The plaintiffs commenced this ten-taxpayer action under G. L. c. 40, § 53,[3] to enjoin the town of Burlington, its board of selectmen, and its treasurer (collectively called town) from defending or indemnifying Paula Davis, the chairwoman of the town's finance committee, in a defamation action brought against her.[4] The plaintiffs claim that the allegedly defamatory statements of Davis were made outside the scope of the authority of the Burlington finance committee (committee) and that any payments by the town on behalf of Davis are not authorized by the Massachusetts Tort Claims Act, G. L. c. 258, § 9 (1984 ed.).[5]

After a bench trial, a judge of the Superior Court enjoined the town from expending any monies to defend or indemnify

---

[3] General Laws c. 40, § 53 (1984 ed.), provides as follows: "If a town, regional school district, or a district as defined in section one A, or any of its officers or agents are about to raise or expend money or incur obligations purporting to bind said town, regional school district, or district for any purpose or object or in any manner other than that for and in which such town, regional school district, or district has the legal and constitutional right and power to raise or expend money or incur obligations, the supreme judicial or superior court may, upon petition of not less than ten taxable inhabitants of the town, or not less than ten taxable inhabitants of any town in the regional school district, or not less than ten taxable inhabitants of that portion of a town which is in the district, determine the same in equity, and may, before the final determination of the cause, restrain the unlawful exercise or abuse of such corporate power."

[4] On April 22, 1985, the board of selectmen directed town counsel to represent Davis in the defamation action, Pollicelli vs. Davis, Middlesex County, Superior Court, Civil No. 85-2060, at the town's expense.

[5] General Laws c. 258, § 9 (1984 ed.), provides, in part, that "[p]ublic employers may indemnify public employees from personal financial loss and expenses, including legal fees and costs, if any, in an amount not to exceed one million dollars arising out of any claim, action, award, compromise, settlement or judgment by reason of an intentional tort, or by reason of any act or omission which constitutes a violation of the civil rights of any person under any federal or state law; if such employee or official at the time of such intentional tort or such act or omission was acting within the scope of his official duties or employment. . . . " Because Davis was sued for an intentional tort (i.e., defamation), the permissive indemnification procedure of section nine of c. 258 is relevant, as opposed to the mandatory indemnification procedure at sections one through eight. The parties here stipulated that Davis was a "public employee" and that the town is a "public employer" under G. L. c. 258, § 1.

Davis, stating that to do so would be "neither appropriate nor statutorily permissible" under G. L. c. 258, § 9. The town appealed, and we took the case on our own motion. We reverse.

At trial the only witnesses to testify were Davis and Robert Mercier, the town's chief administrative officer. The following summarizes the facts found by the judge.

During 1984 and early 1985, the town was embroiled in a controversy concerning the condition of the town's two ambulances. The finance committee had opposed the purchase of a new ambulance, while the board of selectmen supported the purchase. The positions of the two sides were described as "heatedly antagonistic," and the issue drew widespread public interest. Appropriations for a new ambulance were rejected at both the September, 1984, and January, 1985, town meetings in line with the committee's recommendations.

On February 21, 1985, Davis met with Mercier to discuss the ambulance situation. Both Mercier and Davis testified that Davis went to talk with Mercier as part of her duties as chairwoman of the finance committee. During the discussion Davis told Mercier that residents of the town had approached her about the suspicious circumstances of the ambulance's breaking down immediately after a town meeting vote which had rejected the idea of replacing the equipment. Davis told Mercier that he should "look into" the matter and asked him to commence an investigation. Mercier reported the discussion to the fire chief and at least two of the selectmen but had no communication with any other members of the committee on this issue. Davis did not meet with Mercier at the request or order of the finance committee, and no other members of the committee were present.

The judge ruled that Davis was not acting as a public employee during her discussion with Mercier, and that when "she walked into Mercier's office she left her official identity behind." He based that ruling on three inferences: (1) that, although Davis's position permitted her to obtain an audience with Mercier more readily than an ordinary resident, the discussion between them was "no different from the conversation Mercier would have had with any Burlington taxpayer"; (2)

that in arranging the meeting Davis sought only to bring Mercier's official attention to the concerns of the residents who approached her; and (3) that since "Mercier reported the discussion to the Fire Chief, the Deputy Chief, and at least two Selectmen, [but h]e did not mention the matter to any member of the Finance Committee; nor did any member of the Finance Committee communicate with him. . . . Mercier considered Davis to be talking to him in her private capacity."

The town contests the inference that Mercier considered Davis to be talking to him in her private capacity on February 21, 1985. The town also argues that the conversation between Davis and Mercier was within Davis's scope of employment and therefore G. L. c. 258, § 9, does not preclude her from being indemnified by the town.

1. "We give due weight to the findings of the judge who has heard the testimony and who has had an opportunity to weigh the credibility of the witnesses. *Seder* v. *Gibbs*, 333 Mass. 445, 446 (1956). His findings of fact will not be set aside unless they are clearly erroneous. Mass. R. Civ. P. 52(a), 365 Mass. 816 (1974)." *Simon* v. *Weymouth Agricultural & Indus. Soc'y*, 389 Mass. 146, 148 (1983). The sufficiency of the evidence is a question of law, however, subject to review by this court. *Smith* v. *Board of Appeals of Brookline*, 366 Mass. 197, 200 (1974).

We see no reason why Mercier's reporting the discussion to selectmen, the fire chief and deputy fire chief and not to committee members implies anything about whether he thought Davis was acting in a public or private capacity. Indeed, the evidence was that Davis, not Mercier, customarily reported to the committee the substance of her regular talks with Mercier. The judge found that in arranging the meeting Davis sought to bring Mercier's official attention to the concerns of the residents who approached her. In view of the broad financial responsibility of town finance committees, and the specific concern of the Burlington committee for the need for a new ambulance, the circumstances of the recent breakdown of the ambulance were certainly a subject within the official concern of the committee and its chairwoman. There was simply no

direct evidence to support the conclusion that Davis met with Mercier as a private citizen and not as a committee chairwoman. We think the evidence points the other way; but even if this is not so, the taxpayers had the burden of proof on the issue and the evidence would not warrant the finding that Davis did not meet with Mercier in her capacity as committee chairwoman.

2. Even if Davis visited Mercier in her official capacity, there remains the further question whether the conversation fell "within the scope of [Davis's] official duties or employment." The trial judge did not reach the issue as he found Davis to have met with Mercier as a private citizen. The town argues that Davis's action fell within her scope of employment under several theories, including respondeat superior.

We have not had occasion to consider the scope of employment under G. L. c. 258, § 9. However, G. L. c. 258 is modeled closely on the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. (1982). *Vasys* v. *Metropolitan Dist. Comm'n*, 387 Mass. 51, 54 (1982). Glannon, Governmental Tort Liability under the Massachusetts Tort Claims Act of 1978, 66 Mass. L. Rev. 7, 9 (1981). In construing Massachusetts statutes we are ordinarily guided by the construction given the parallel Federal statute by the Federal courts. *Vasys* v. *Metropolitan Dist. Comm'n, supra* at 54. *Kelley* v. *Rossi*, 395 Mass. 659, 662 n.4 (1985). The Federal courts have referred to the applicable State law of respondeat superior in determining the scope of employment under the Federal statute. *Williams* v. *United States*, 350 U.S. 857 (1955) (per curiam). *Lutz* v. *United States*, 685 F.2d 1178, 1182 (9th Cir. 1982). Though respondeat superior principles are usually applied to determine whether an employer should be held liable for the acts of employees, the test is, at least, useful in determining the scope of employment under G. L. c. 258, § 9.[6] Cf. *Wang*

---

[6] We note that the ultimate question under G. L. c. 258, § 9, is somewhat different; i.e., whether the town should be *allowed* to indemnify a public employee or official. It may be that the permissive nature of the indemnity statute may allow a broader scope of employment definition than under the respondeat superior inquiry.

*Laboratories, Inc.* v. *Business Incentives, Inc.*, 398 Mass. 854, 859 (1987).

The general respondeat superior test involving intentional torts considers whether the act was within the course of employment, and in furtherance of the employer's work. See *Wang Laboratories, Inc.* v. *Business Incentives, Inc., supra; Miller* v. *Federated Dep't Stores, Inc.*, 364 Mass. 340 (1973); *Rego* v. *Thomas Bros.*, 340 Mass. 334, 335 (1960); *Levi* v. *Brooks*, 121 Mass. 501 (1877). The scope of an employee's employment is not construed restrictively. *Commonwealth* v. *Jerez*, 390 Mass. 456, 461-462 (1983).

The plaintiffs argue that the town may expend public funds to indemnify Davis only if her discussion with Mercier was within the scope of her official duties as chairwoman of the committee as determined by article IX, section 5-0, of the general by-laws of the town of Burlington.[7] We decline to adopt such a restrictive interpretation of the term for the purposes of G. L. c. 258, § 9. Moreover, and contrary to the plaintiffs' assertion, it is ordinarily the actual and customary, rather than formally described, duties which determine scope of employment. See Restatement (Second) of Agency § 229 comment a (1958) ("[A] servant is authorized to do anything which is reasonably regarded as incidental to the work specifically directed or which is usually done in connection with such work"). Furthermore, the by-laws fail to give any description of the duties of the chairman of the finance committee; they simply note that the committee shall choose its chairman and vice-chairman. Article IX, section 3.0. Apparently, the plaintiffs would claim that the chairman has no duties different from the other members of the committee, because no duties

---

[7] Article IX of the town by-laws establishes the town's finance committee. Section 5.0 of this article provides: "The Committee may, for just cause, investigate the books, accounts, records, and management pertaining to the finances of any office, department, committee or board of the Town. The Committee is obligated to conduct such investigation upon petition of 100 voters and subsequent to the approval of the Selectmen. The Committee may employ such assistance as it may deem advisable for that purpose but shall not incur any expense payable by the Town without authority granted by the Selectmen."

of the chairman are given in the town by-laws or any other source. Although it would be open for the town so to restrict the chairman's duties, such restriction would be contrary to the usual practice among committees generally, and apparently contrary to the actual practice in Burlington. The subject of the questionable breakdown of the ambulance was not one of idle curiosity but of great importance in the committee's recommendation concerning the acquisition of a new ambulance at the next town meeting. To rule otherwise would improperly restrict the activities of the committee. Under the circumstances Davis was entitled to discuss the subject with Mercier.

Statute 1978, c. 512, § 18, provides in relevant part that "[t]he provisions of this [Massachusetts Tort Claims] act shall be construed liberally for the accomplishment of the purposes thereof." As we noted in *Filippone* v. *Mayor of Newton*, 392 Mass. 622, 629 (1984): "As a matter of policy, public indemnification of public officials serves in part to encourage public service." To adopt a restrictive view of the scope of employment under G. L. c. 258, § 9, would be inconsistent with the purposes of the statute and would encourage public officials to view their duties in an unreasonably restrictive manner. Because we conclude that Davis's discussion falls within the scope of employment under G. L. c. 258, § 9, under general respondeat superior principles, we need not consider the town's alternative theories.

*Judgment reversed.*