Allison B. VAN DER HEYDE,
Plaintiff and Appellant,

v.

FIRST COLONY LIFE INSURANCE COMPANY and Preston G. Adams,
Defendants and Appellees.

No. 910483–CA.

Court of Appeals of Utah.

Jan. 15, 1993.

Royal I. Hansen and H. Dennis Piercey (argued), Moyle & Draper, P.C., Salt Lake City, for plaintiff and appellant.

Stephen B. Nebeker (argued), and Rick L. Rose, Ray, Quinney & Nebeker, Salt Lake City, for defendant and appellee First Colony Life Ins. Co.

Before GARFF, JACKSON and ORME, JJ.

## OPINION

GARFF, Judge:

Appellant, Allison B. van der Heyde, appeals from a summary judgment in favor of First Colony Life Insurance Company (First Colony) and from the denial of her cross-motion for summary judgment. We affirm in part, reverse in part, and remand.

## FACTS

██ When reviewing an appeal from a summary judgment, we view the facts and inferences reasonably drawn therefrom in a light most favorable to the party opposing summary judgment. *Blue Cross and Blue Shield v. State*, 779 P.2d 634, 636 (Utah 1989); *Hardy v. Prudential Ins. Co. of Am.*, 763 P.2d 761, 763 (Utah 1988). We recite the facts accordingly.

On September 9, 1983, American Agency Life Insurance Company (American) issued Peter van der Heyde, plaintiff's husband, a whole life insurance policy with a face

amount of $200,000.00. Mr. van der Heyde purchased the American policy through Preston G. Adams, an independent insurance agent,[1] who maintained sole possession of the American policy.

In September 1984, with the American policy due for renewal, Adams solicited Mr. van der Heyde's purchase of a $200,000.00 life insurance policy from First Colony. After Mr. van der Heyde applied for the policy, First Colony issued it on September 12, 1984. The policy listed Mrs. van der Heyde as the primary beneficiary. That same month, Mr. van der Heyde allowed the American policy to lapse.

Prior to Mr. van der Heyde's purchase of the First Colony policy and prior to the lapsing of the American policy, Mr. van der Heyde met with Adams to apply for the policy. During that meeting, Adams read the application questions to Mr. van der Heyde. Adams then filled in the application based on Mr. van der Heyde's verbal answers. Although Adams knew that he had previously sold the American policy to Mr. van der Heyde, Adams, when completing the application, did not identify the American policy as an existing policy on Mr. van der Heyde's life.[2] One of the answers in the application indicated that Mr. van der Heyde did not intend that the First Colony policy "replace or change any existing insurance." In the "Agent's Report" portion of the application, Adams also indicated that "replacement" was not involved. Mr. van der Heyde signed the application as the proposed insured, and Adams signed as the soliciting agent.

The First Colony policy contained a suicide exclusion clause that stated, "If the Insured, while sane or insane, shall die by suicide within two years after the Date of Issue, the liability of the Company under this Policy shall be limited to an amount equal to the premiums paid." The policy's suicide exclusion is consistent with Utah Code Ann. § 31–22–15 (1974) (replaced in 1986 by Utah Code Ann. § 31A–22–404 pursuant to insurance code recodification), which provides in relevant part:

> From and after the effective date of this act, the suicide of a policyholder after the second policy year of any policy written by any life insurance company doing business in this state shall not be a defense against the payment of a life insurance policy, whether such suicide was voluntary or involuntary and whether such policyholder was sane or insane;
>
> . . . .

On July 5, 1986, approximately twenty-two months after the issuance of the First Colony policy, Mr. van der Heyde killed himself. First Colony refused to pay policy benefits to Mrs. van der Heyde because Mr. van der Heyde died by suicide within two years after the issuance of the policy. Under Utah law, American would have had to pay benefits under its policy, regardless of suicide, had that policy remained in effect.

In 1988, Mrs. van der Heyde sued First Colony and Adams for recovery of benefits pursuant to the First Colony policy. She claimed that the First Colony policy was a continuation of the American policy, and that therefore the September 9, 1983, issuance date of the American policy applies in determining whether suicide is a defense to payment. Alternatively, Mrs. van der Heyde claimed that First Colony is estopped from relying on suicide as a basis for denying benefits because First Colony and Adams failed to comply with the life insurance replacement regulations.

Both First Colony and Mrs. van der Heyde moved for summary judgment. The court concluded that the First Colony policy was not a continuation of the American policy. It also concluded that the First Colony policy was not a replacement policy for the American policy. The court then granted summary judgment in favor of First Colony. Mrs. van der Heyde appeals.

**1.** As an independent insurance agent, Adams sold insurance for a variety of companies. The court, pursuant to the parties' stipulation, dismissed Adams from the appeal.

**2.** Part 11 of the First Colony application required a listing of all existing life insurance policies.

## CONTINUATION

On appeal, Mrs. van der Heyde argues that the court erred in granting summary judgment to First Colony and in concluding that the First Colony policy was not a continuation of the American policy. She argues that the suicide clause period should be measured from the issue date of the prior American policy.

■ Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Rollins v. Petersen*, 813 P.2d 1156, 1159 (Utah 1991); *Utah State Coalition of Senior Citizens v. Utah Power and Light Co.*, 776 P.2d 632, 634 (Utah 1989). We review for correctness the court's conclusions supporting its grant of summary judgment, and do not defer to the trial court's legal conclusions. *Rollins*, 813 P.2d at 1159; *Utah State Coalition of Senior Citizens*, 776 P.2d at 634.

In support of her continuation argument, Mrs. van der Heyde did not present, and a search by this court did not reveal, any authority on the precise issue of whether the continuation doctrine may apply when a different insurer issues a subsequent policy.[3] Instead, the cases cited by Mrs. van der Heyde in support of her continuation argument involve situations in which the same insurer issued both the prior and subsequent policies. *See, e.g., Carter v. Standard Accident Ins. Co.*, 65 Utah 465, 485–86, 238 P. 259, 267–68 (1925) (holding that continuation applies where the terms and form of the policies did not vary and the same insurer issued the original as well as the subsequent accident policies).

■ While we recognize that the continuation doctrine might apply in situations where a different subsequent insurer is involved and a special relationship exists between the prior and subsequent insurers, no such relationship exists in this case. Thus, the trial court correctly concluded that the First Colony policy was not a continuation of the American policy, which had lapsed.

## REPLACEMENT

Mrs. van der Heyde claims the trial court erred in concluding that the First Colony policy did not replace the American policy. She contends that First Colony and Adams failed to comply with the Insurance Department's Life Insurance Replacement Regulation 79–1[4] in the course of soliciting the First Colony policy. Based on this failure, she argues that First Colony should be estopped from relying on the suicide exclusion as a basis for denying life insurance benefits.

We review this conclusion for correctness and do not defer to the trial court. *Rollins v. Petersen*, 813 P.2d 1156, 1159 (Utah 1991); *Utah State Coalition of Senior Citizens v. Utah Power and Light Co.*, 776 P.2d 632, 634 (Utah 1989).

■ We first consider whether Adams's solicitation and sale of the First Colony policy involved replacement insurance as contemplated by Regulation 79–1. Section three of Regulation 79–1 defines replacement in relevant part as

any transaction in which new life insurance is to be purchased, and it is known or should be known to the proposing agent, or to the proposing insurer if there is no agent, that by reason of such transaction, existing life insurance has been or is to be:

---

**3.** In determining whether a subsequent life insurance policy is independent of or a continuation of a prior policy, courts have focused on two considerations: (1) whether the two policies substantially differ; or (2) whether the subsequent policy was issued pursuant to a provision in the original policy providing for conversion or exchange. *United Fence Co. v. Great-West Life Assurance Co.*, 150 Ariz. 373, 723 P.2d 722, 725 (Ct.App.1986); *accord Binkley v. Manufacturers Life Ins. Co.*, 471 F.2d 889, 891–93 (10th Cir.), *cert. denied,* 414 U.S. 877, 94 S.Ct. 130, 38 L.Ed.2d 122 (1973). *See generally* 9 G. Couch, *Couch On Insurance 2d* § 40:53, p. 797 n. 7 (1985).

**4.** Life Insurance Replacement Regulation 79–1 was promulgated pursuant to Utah Code Ann. §§ 31–2–3.5 (1974) (replaced in 1986 by Utah Code Ann. § 31A–2–201 pursuant to insurance code recodification).

A. Lapsed, forfeited, surrendered, or otherwise terminated.

The question therefore turns on whether Adams, as the proposing agent, knew or should have known that he was selling a replacement policy. Regulation 79–1 does not permit the agent or insurer to rely solely upon the application for insurance to determine whether the proposed policy is for replacement purposes. To the contrary, we view the agent's actions in light of all the information that is known or should have been known at the time of the transaction.[5]

■ In the instant case, the record compels a conclusion that the First Colony policy was a replacement for the American policy: (1) Adams knew at the time he solicited the First Colony policy that he had previously sold the American policy to Mr. van der Heyde; (2) Adams contacted and solicited Mr. van der Heyde's purchase of the First Colony policy in September 1984, the annual renewal date for the American policy; (3) the American policy lapsed for nonpayment of the premium after the First Colony policy had been issued; and finally, (4) the policies had the same face amount. Based on the record before us, Adams knew or should have known that the First Colony policy was a replacement policy subject to the requirements of Regulation 79–1. Thus, the trial court erred in concluding that the First Colony policy was not a replacement policy.

■ The express purpose of Regulation 79–1, as stated in section two, is to "regulate the activities of insurers and agents with respect to the replacement of existing life insurance," and to "protect the interests of life insurance policyholders by establishing minimum standards of conduct to be observed in the replacement or proposed replacement of existing life insurance." By establishing minimum standards, "the policyowner receives information with which a decision can be made in his or her own best interest" and "the opportunity for misrepresentation and incomplete disclosures" is reduced. According to section one, the issuance of any replacement policy not issued or offered for issuance in compliance with the terms of Regulation 79–1 is deemed to be both "injurious to the insuring public" and "an unfair and deceptive trade practice."

When an agent offers replacement insurance, the agent is required by section six, the "Duties of Agents" section, to provide the applicant with a "Notice Regarding Replacement of Life Insurance," setting forth certain pitfalls in replacing existing life insurance. The applicant must sign the notice. The agent must also provide the applicant with a "Comparative Information Form" setting forth a detailed comparison of the existing and proposed policies. Both the agent and the applicant must sign the form. The agent must submit to the replacing insurer signed copies of both the notice and comparison forms, any sales materials used by the agent in soliciting the replacement insurance, and the insurance application. In addition, the agent must provide the applicant with the original or a copy of any sales materials used in soliciting the replacement insurance.

Section seven, which sets forth the duties of replacing insurers, requires a replacing

---

**5.** First Colony argues that it was entitled to rely on Mr. van der Heyde's answer in the application that replacement insurance was not involved, and that Adams therefore reasonably believed the First Colony policy was an additional, rather than a replacement, insurance policy. This argument fails because the information in the application is not controlling in determining whether the purchase of new insurance involves replacement. *See Farley v. Metropolitan Ins. Co.,* 127 A.D.2d 99, 513 N.Y.S.2d 712, 714–15 (1987); *see also Tannenbaum v. Provident Mut. Life Ins. Co.,* 53 A.D.2d 86, 386 N.Y.S.2d 409, 415 (1976), ("A life insurance salesman, deriving his income from commissions earned on sales of life insurance, is motivated ... by self-interest" to have the switch in policies take place.) *aff'd,* 41 N.Y.2d 1087, 396 N.Y.S.2d 351, 364 N.E.2d 1122 (1977). By arguing that they should be permitted to rely solely on the application, First Colony implicitly argues, in contravention of Regulation 79–1, that all other relevant information surrounding the purchase of the First Colony policy should be ignored. Furthermore, Adams's alleged belief that the First Colony policy was additional insurance stems from his failure to list the American policy as an existing policy in the First Colony application.

insurer to include in each application for life insurance (1) a signed statement by the applicant "as to whether or not such insurance will replace existing life insurance;" and (2) a signed statement by the agent "as to whether or not he or she knows replacement is or may be involved in the transaction." In addition, a replacing insurer must maintain copies of the notice regarding replacement, the comparative information form, and a copy of all sales materials used to solicit the replacement policy. A replacing insurer must also verify the accuracy of information concerning the proposed policy furnished to the applicant in the comparison information form, furnish the applicant with a policy summary, and send a verified comparative information form to the existing insurer.[6]

The parties do not dispute that Adams, in the course of soliciting the First Colony policy, provided Mr. van der Heyde with neither a notice regarding replacement of life insurance nor a comparative information form. Adams therefore failed to comply with Regulation 79–1.[7] In so doing, he breached the statutory duty owed to Mr. van der Heyde.

### ESTOPPEL

 We next consider whether First Colony is estopped from relying on the suicide exclusion to deny benefits. Estoppel, as an equitable doctrine, requires proof of three elements: (1) a statement, admission, act, or failure to act by one party that is inconsistent with a claim later asserted; (2) the other party's reasonable action or inaction that is based on the first party's statement, admission, act, or failure to act; and (3) injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act. *CECO Corp. v. Concrete Specialists, Inc.*, 772 P.2d 967, 969–70 (Utah 1989); *Brixen & Christopher, Architects v. Elton*, 777 P.2d 1039, 1043–44 (Utah App.1989).

In the instant case, the parties dispute facts material to whether estoppel applies. Adams, in his deposition testimony, alleges he verbally informed Mr. van der Heyde about the effect of the suicide exclusion clause. The fact finder may or may not find such self-serving testimony credible. Furthermore, the fact finder may infer that Mr. van der Heyde would not have permitted the American policy to lapse had he been given proper notice and comparison of the policies as required by Regulation 79–1. We do not consider the question to be so speculative as to defeat all liability.

In sum, the trial court correctly concluded that the First Colony policy was not a continuation of the lapsed American policy, and that therefore the suicide period does not relate back to the date of issuance of the American policy. However, the court erred in concluding that the First Colony policy was not a replacement policy. Material issues of fact concerning what Adams did and said and what Mr. van der Heyde would have done nonetheless preclude summary judgment in Mrs. van der Heyde's favor. We need not consider other matters raised by the parties in light of our decision herein.[8] Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

JACKSON and ORME, JJ., concur.

---

6. One of the consequences of Adams's failure to list the American policy in the application as an existing policy was the failure to give American, the existing insurer, notice of the contemplated replacement. This failure to give notice foreclosed an obvious source of information that would have contributed to a more informed decision by Mr. van der Heyde.

7. We note that it does not necessarily follow from the violation of Regulation 79–1 that First Colony is liable. An "unfair and deceptive trade practice" may trigger various remedies, but automatic judgment is not one of them.

8. In moving for summary judgment, First Colony assumed, but did not concede, that Adams was its agent. The issue of whether Adams is an agent of the insurer or the insured is a question of fact, *Vina v. Jefferson Ins. Co.*, 761 P.2d 581, 585 (Utah App.1988) (citing 3 G. Couch, *Couch On Insurance 2d* § 25:106 (1984)), and therefore should be determined on remand.