JANET MAYER *vs.* COHEN-MILES INSURANCE AGENCY, INC.,
& another.[1]

No. 96-P-1275.

Essex. December 17, 1998. - January 12, 2000.

Present: PERRETTA, LAURENCE, & BECK, JJ.

*Contract,* Insurance. *Insurance,* Life insurance, Lapse for nonpayment of premium, Replacement, Notice, Regulation. *Consumer Protection Act,* Insurance, Unfair or deceptive act.

Where a policy of "universal life" insurance had lapsed due to the nonpayment of premiums and was not reinstated under the terms of the policy and where, after the lapse, the insured applied for a new policy of term life insurance, the term policy was not a "replacement policy" within the meaning of 211 Code Mass. Regs. § 34.02 (1987), with the result that the insurance agents had no duty to provide notice, pursuant to 211 Code Mass. Regs. § 34.04, that the two-year suicide contestability period would begin anew upon the purchase of the new term policy. [440-443]

In a claim for an alleged violation of G. L. c. 93A, the judge correctly concluded that an insured was motivated by the cost of the premium of an insurance policy when he purchased a policy of term life insurance and forewent reinstatement of his lapsed universal life policy, and, consequently, that any failure of the insurance agent to have disclosed that a two-year suicide contestability period would begin to run anew upon the purchase of the new term policy was not a violation of 940 Code Mass. Regs. § 3.16(2) (1986), which requires disclosure of material facts. [443-444]

CIVIL ACTIONS commenced in the Superior Court Department on March 26 and October 30, 1992, respectively.

After consolidation, the cases were tried before *David M. Roseman,* J.

*Marvin R. Finn* for the plaintiff.

*Robert P. Powers* for the defendants.

BECK, J. After her husband committed suicide, the plaintiff, Janet Mayer, submitted a claim to the Royal Maccabees Life

---

[1]Ronald Miles.

Insurance Company (Maccabees or insurance company) under her husband's term life insurance policy. The insurance company denied the claim on the ground that Peter Mayer had taken his own life within the policy's two-year suicide contestability period. Janet Mayer then filed suit against the insurance company, the insurance agent, Ronald Miles, and the Cohen-Miles Insurance Agency, Inc. (insurance agency). She claimed that the insurance company had breached its contract with her husband; that the insurance company, the agent, and the insurance agency were all negligent and deceitful; and that all three defendants had violated G. L. c. 93A. Prior to trial, the plaintiff settled her claim against the insurance company. The counts for deceit against the remaining parties also were dismissed with prejudice. The negligence claims were tried to a Superior Court jury, who returned verdicts for the remaining defendants, the agent Miles and the insurance agency. The judge reserved to himself the c. 93A claims. He ruled for the defendants on all counts. On appeal the plaintiff claims that the judge erred in rejecting her c. 93A claims and in allowing certain testimony.

*Factual background.* We take the facts from the trial judge's findings on the c. 93A claims, augmented by uncontested facts in the record. In 1984, Peter Mayer bought a $250,000 adjustable life insurance policy through the insurance agency, a company owned in part by his close friend Ronald Miles. The beneficiary of the policy was the plaintiff, Mayer's wife. The underwriter was Maccabees. (The parties refer to this policy as a "universal policy.")

Several years later, Peter Mayer started a mail and billing service business in his garage. Mayer was the president and did the day-to-day work. Miles provided financial support and advice. Through the insurance agency, Mayer obtained two "key man" insurance policies payable to the new business. One of those policies was also with Maccabees.

In July, 1988, Peter Mayer increased his coverage under the universal policy to $350,000. He was struggling financially and soon fell behind in paying the premiums. He made his last payment on the policy in September, 1988. On October 28, 1988, Maccabees sent Mayer a notice that his premium was overdue and that his coverage would be terminated, pursuant to the terms of the universal life contract, at the end of a sixty-one day grace period if Mayer did not bring his payments up to date. When Mayer failed to make the required payment by December

28, 1988, the insurance company terminated the policy. Mayer did not receive the termination notice until on or about February 20 or 21, 1989, ironically because of what Maccabees described as the "gross negligence" of its billing service. When Mayer called the insurance company to dispute the notice, the insurance company told him that the two premium payments he had sent in late 1988 were for the key man policy, not his personal policy. (The premiums for the key man policy were considerably less than those required for the universal policy.) Apparently the business paid the premiums on all three policies. Mayer then called the insurance agency. The agency explained that he could reinstate the universal policy by making a back payment of $720 and reminded Mayer that once the policy was reinstated, the next quarterly payment would be due in thirty to forty-five days.

According to the terms of the universal policy, Mayer retained the right to reinstate the policy for five years from the date of the first unpaid premium. Reinstatement required an application and "satisfactory evidence of insurability" of the applicant.

On March 3, 1989, the insurance agency sent Mayer a reinstatement form and a self-addressed envelope. Mayer asked Miles for advice as to whether there was any way he could maintain the same coverage for a smaller premium. Miles told Mayer that Mayer could purchase a term policy for the same face amount at a lower premium. On March 28, 1989, Mayer signed an application for a term policy for coverage in the amount of $350,000. It appears that the application was not forwarded to Maccabees until May 2, 1989. The insurance company issued the policy on June 8, 1989, with the plaintiff as the beneficiary.

Fifteen months later, on September 25, 1990, apparently in response to a request from Mayer, the insurance agency sent Mayer a summary of his insurance coverage. In addition to information about his home, automobile, workers' compensation, and disability insurance policies, the summary indicated that the new term life insurance policy's premiums were paid up through June 8, 1991. On October 5, 1990, Mayer committed suicide.

A few days later, the plaintiff filed a claim with Maccabees for the proceeds of Mayer's term life insurance policy. At approximately the same time, Miles sent a letter on the insurance agency's letterhead to Maccabees "with great anguish and sor-

row" urging the insurance company to consider the term policy as a "continuation" of the "original universal life policy." Each insurance policy had a suicide contestability provision of two years set out under a paragraph captioned "Suicide." Had the universal policy remained in force, the plaintiff would have received the full coverage under the policy because more than two years had elapsed since the purchase of the policy. The term policy, however, was less than two years old. After initially denying liability on the policy, Maccabees settled with the plaintiff prior to trial for $175,000, half the face value of the policy. The plaintiff seeks to recover the balance of the policy and her attorney's fees from the remaining defendants.

*Discussion.* The plaintiff's appeal focuses on two alleged regulatory violations she claims constitute per se violations of G. L. c. 93A. The judge reserved these claims for himself and issued detailed findings of fact and conclusions of law.

*Standard of review.* In reviewing a matter in which the trial judge acts as fact finder, we "accept the judge's findings of fact as true unless they are clearly erroneous." *Kendall* v. *Selvaggio*, 413 Mass. 619, 620 (1992). A finding may be clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *J.A. Sullivan Corp.* v. *Commonwealth*, 397 Mass. 789, 792 (1986), quoting from *United States* v. *United States Gypsum Co.*, 333 U.S. 364, 395 (1948). "The intent with which a person acts is usually a question of fact . . . to be determined from his declarations, conduct and motive, and all the attending circumstances." *Galotti* v. *United States Trust Co.*, 335 Mass. 496, 501 (1957), quoting from *Casey* v. *Gallagher*, 326 Mass. 746, 749 (1951). "We give due weight to the findings of the judge who has heard the testimony and who has had an opportunity to weigh the credibility of the witnesses." *Howard* v. *Burlington*, 399 Mass. 585, 588 (1987), quoting from *Seder* v. *Gibbs*, 333 Mass. 445, 446 (1956). On the other hand, we "scrutinize without deference the legal standard which the judge applied to the facts." *Kendall* v. *Selvaggio*, 413 Mass. at 621.

*General Laws c. 93A claims.* The plaintiff's complaint under G. L. c. 93A alleged that Miles and the insurance agency committed unfair and deceptive acts and practices in violation of c. 93A and related sections of G. L. c. 176D, and 211 Code Mass. Regs. § 34.04 (1987). Although set out in several

paragraphs, the essence of the claimed violations was the defendants' failure to inform Mayer that if he elected to purchase a term insurance policy instead of reinstating the universal policy, the two-year incontestability provision regarding suicide would commence anew with the purchase of a term policy.

*Title 211 Code Mass. Regs. § 34.00.* On appeal, the plaintiff argues first that Miles and the insurance agency violated the notice provisions set out in 211 Code Mass. Regs. § 34.04 (1987). Section 34.04 requires agents and brokers to provide a person applying for replacement insurance with a notice recommending "careful comparison of [the] existing policy and the proposed replacement policy." The text of the required notice is set out in the regulation. Such a violation would constitute a per se violation of G. L. c. 93A. See 211 Code Mass. Regs. § 34.08(3) (1987). The trial judge rejected this claim because he concluded that "Mayer's purchase of term life insurance was not a 'replacement' [policy] as defined by 211 [Code Mass. Regs.] § 34.00 and therefore defendants had no duty to provide notice to Mayer." We agree.

The regulation set forth at 211 Code Mass. Regs. § 34.00 (1987) is entitled "The Replacement of Life Insurance and Annuities." It was promulgated by the Division of Insurance pursuant to St. 1986, c. 632, § 2 ("An act relative to the replacement of life insurance"). The statute required the promulgation of regulations such as those at issue here, based on model regulations of the National Association of Insurance Commissioners governing replacement of life insurance. *Ibid.* The purpose of the regulation is "[t]o regulate the activities of insurers, agents and brokers with respect to the replacement of existing life insurance and annuities [§ 34.01(1)] [and] [t]o protect the interests of . . . purchasers by establishing minimum standards of conduct . . . by . . . [a]ssuring that purchasers receive information with which a decision can be made in his or her own best interest [§ 34.01(2)(a)]" and by "[r]educing the opportunity for misrepresentation and incomplete disclosures." 211 Code Mass. Regs. § 34.01(2)(b).

As set out in the statute and as subsequently promulgated by the Division of Insurance, the regulations define replacement as

"any transaction in which new life insurance or a new annuity is to be purchased, and it is known or should be

known to the proposing agent or broker or to the proposing insurer if there is no agent, that by reason of such transaction, existing life insurance or annuity has been or is to be:

"(a) lapsed, forfeited, surrendered or otherwise terminated;

"(b) converted to reduced paid-up insurance, continued as extended term insurance, or otherwise reduced in value . . . ;

"(c) amended so as to effect either a reduction in benefits or in the term for which coverage would otherwise remain in force or for which benefits would be paid . . . ."

211 Code Mass. Regs. § 34.02. An "existing life insurance or annuity" is defined as "any life insurance or annuity in force, including life insurance under a binding or conditional receipt or a life insurance policy or annuity that is within an unconditional refund period." *Ibid.*

The trial judge's conclusion that the term policy was not a replacement policy is an accurate application of the language of the regulation to the facts. The universal policy was neither "existing" nor "in force," *ibid.*, at the time of the transaction involving the purchase of the term insurance policy. Nor did the universal policy lapse or otherwise terminate "by reason of [the] transaction" involving the purchase of the term policy. The universal policy terminated on December 28, 1988, when Peter Mayer failed to send the overdue payment to Maccabees. He had received notice on October 28, 1988, of the imminent termination. The universal policy provided that if a premium is "not paid within the [g]race [p]eriod, all coverage will terminate without value at the end of the sixty-one day [grace] period." Even if we were to consider the policy not to have terminated until Mayer received belated confirming notice of the termination and clarified that the payments he had made were for the key man policy, the universal policy had clearly terminated by May 2, 1989, when he forwarded his application for the term policy. The plaintiff argues that the decision whether to reinstate the universal policy or purchase a new term policy raised the same issues as a decision whether to allow an existing policy to lapse in favor of purchasing a new policy. In support of this argument she points to use of the past tense, "has been," in the

definition of replacement "existing life insurance or annuity has been or is to be . . . lapsed." 211 Code Mass. Regs. § 34.02. However, whatever the merits of such an argument on policy grounds, as the trial judge determined, the language of the regulation does not support it. The plaintiff's argument ignores the critical words "by reason of such transaction" that precede those the plaintiff emphasizes. The universal policy had already lapsed by the time Mayer finally confronted the decision whether to apply to reinstate that policy or apply to buy a term policy. The critical nexus between the lapse and the decision is missing. As the trial judge found, "[t]he transaction in which Mayer purchased term life insurance had no effect on the [u]niversal [l]ife [i]nsurance [p]olicy and did not cause it to be lapsed, forfeited, surrendered, or otherwise terminated."

Although there is no Massachusetts case law precisely on point, compare *Brindis* v. *Mutual Life Ins. Co.*, 29 Mass. App. Ct. 368, 370 (1990) (considering suicide incontestability clauses in the case of the purchase of optional additional policies and citing out-of-State cases on replacement policies), case law in other states regarding replacement policies supports the judge's decision. Indeed, *Choczner* v. *William Penn Life Ins. Co.*, 212 A.D.2d 750 (N.Y. 1995), is directly on point. In that case, the prior policy had lapsed without value for nonpayment of premiums. Six months later the decedent filled out an application with a different insurance company purportedly to replace the earlier policy. *Id.* at 751-752. The insurance company denied payment on the more recent policy (on grounds not entirely clear from the decision), and the beneficiary claimed that the original insurance company's failure to abide by regulations governing the purchase of replacement policies, which are very similar to those governing Massachusetts transactions, entitled her to relief. However, the Appellate Division of the New York State Supreme Court held that the regulation did not apply to the transaction because the earlier policy "did not 'exist' at the time that [the decedent] applied for coverage with the defendant [insurance company], and [the decedent's] discontinuation of the prior policy was not 'part of the transaction' with the defendant." *Id.* at 752. The plaintiff here argues that *Choczner* is distinguishable because the lapse of six months is greater than the lapse in her case. However, there is nothing in either *Choczner* or our regulation suggesting that the period of time since the termination of a policy is a factor in determining whether the replacement regulation applies.

The *Choczner* court buttresses its conclusion with the observation that there is no claim that "either the defendant or the insurance agent 'induced the decedent to discontinue the prior policy' for the purpose of replacing it with a policy issued by the defendant [insurance company], and no funds from the [earlier] policy, which had lapsed without value, were used to purchase coverage from the defendant." *Ibid.* Such is the case here as well. There is no suggestion that Miles encouraged Mayer to substitute a term policy. Indeed, the judge explicitly found that "[t]here was no evidence that the defendants sought unfair advantage." Compare *Trainor* v. *John Hancock Mut. Life Ins. Co.*, 54 N.Y.2d 213, 216 (1981) (New York replacement regulations applicable where there was a plan to cash in old policies and a new policy was written).

In *Van der Heyde* v. *First Colony Life Ins. Co.*, 845 P.2d 275, 279 (Utah App. 1993), the court set out four factors for determining whether the policy at issue was a replacement: (1) the agent's knowledge at the time of solicitation of a prior policy; (2) the agent's initiative in contacting and soliciting the new policy at the time of the annual renewal of the prior policy; (3) the lapse of the prior policy after the new policy had been issued; and (4) the identical face amount of the policies. Pursuant to regulations similar to those at issue here, the court held that the policy at issue in *Van der Heyde* was a replacement, because the agent contacted the insured and solicited the purchase of the second policy, and the first policy lapsed for nonpayment after the second policy issued. *Ibid.* On these factors, the term policy here was not a replacement. Compare *Ellis* v. *William Penn Life Assur. Co. of America*, 124 Wash. 2d 1, 12 n.13 (1994), discussing "the practice of 'twisting' " and the purpose of regulation to protect the buyer of a policy from making an unwise choice in canceling an existing policy and buying a new policy. The plaintiff argues *Ellis* supports her claim because the *Ellis* court concluded that the policy was a replacement even though the first policy had lapsed before the subsequent application was submitted. However, a careful reading of the case reveals that the negotiations for the new policy had commenced before the insured let the first policy lapse and the lapse therefore was part of the entire transaction. Such is not the case here. The judge did not err in concluding that the Massachusetts replacement regulations, 211 Code Mass. Regs. § 34.00, do not apply to Mayer's purchase of the term policy.

*Title 940 Code Mass. Regs. § 3.16(2).* The plaintiff next argues that the defendants violated 940 Code Mass. Regs. § 3.16(2) (1986), promulgated by the Attorney General pursuant to G. L. c. 93A, § 2(c). Section 3.16(2) provides that "an act or practice is a violation of M.G.L. c. 93A, § 2, if . . . [a]ny person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction." The plaintiff claims that the judge erred because he applied the wrong standard when he determined that "the two year suicide provision was not a fact which, if disclosed, would have influenced [the insured] not to purchase term life insurance." It is the use of the term "would have influenced" rather than "may have influenced," as set out in the regulation, which the plaintiff claims is error. She relies on her own understanding of the word "may," as well as the undeniable fact that Mayer did commit suicide, to support her argument. Reciting the facts favorable to her claim, she implicitly argues that the judge's finding that money was Mayer's primary concern at the time he made the decision is clearly erroneous.

The cases discussing § 3.16(2) do not support the plaintiff's argument. The regulation "extends liability under c. 93A to cases of nondisclosure of material fact." *Sheehy* v. *Lipton Indus., Inc.,* 24 Mass. App. Ct. 188, 195 (1987). "Section 3.16(2) adds little, if anything, to the provisions of [G. L. c. 93A] . . . itself." *Underwood* v. *Risman,* 414 Mass. 96, 102 (1993). A violation of the statute requires a "material, knowing, and wilful nondisclosure," *id.* at 99, and addresses conduct likely to mislead consumers acting reasonably under the circumstances. See *Commonwealth* v. *AmCan Enterprises,* 47 Mass. App. Ct. 330, 334 (1999). A "practice may be deceptive if it reasonably could be found to have caused the plaintiff to act differently than he or she otherwise would have acted." *Id.* at 335. See *Homsi* v. *C.H. Babb Co.,* 10 Mass. App. Ct. 474, 479 (1980). In determining whether an act or practice is deceptive, "regard must be had, not to fine spun distinctions and arguments that may be made in excuse, but to the effect which it might reasonably be expected to have upon the general public." *Leardi* v. *Brown,* 394 Mass. 151, 156 (1985), quoting from *P. Lorillard Co.* v. *Federal Trade Commn.,* 186 F.2d 52, 58 (4th Cir. 1950). The judge did not misconstrue the standard.

Nor were the judge's findings clearly erroneous. He found that "[i]t was . . . financial cost that motivated Mayer to purchase the term life insurance policy." The judge did "not find it reasonable to conclude that knowledge of the suicide clauses in the term and [u]niversal policies would have caused [Mayer] to act any differently in regard to his decision to purchase term life insurance and to [forgo] reinstatement of his lapsed policy." In retrospect, as set out in the plaintiff's brief, there was evidence of suicidal thoughts on Mayer's part. However, even those who testified to remarks Mayer made at various times in the past, which in hindsight might support an argument that he was considering suicide — a neighbor, a customer, Miles, and the plaintiff — no one, not even his wife, thought he would kill himself. In fact, the plaintiff testified that she was "very concerned that he was going to have a heart attack." Mayer had high blood pressure, for which he was taking medication, and was overweight. (He was 5'8" tall and weighed 215 pounds.) His father had died of heart disease. Mayer killed himself more than sixteen months after purchasing the term policy. It was well within the judge's prerogative to make the determinations of credibility and motive supporting his conclusion that at the time Mayer applied for the term policy, the cost of the premiums was his primary concern. See *Howard* v. *Burlington*, 399 Mass. at 588. None of the judge's findings was clearly erroneous.

*Testimony regarding reinstatement.* Miles testified that had Mayer elected to reinstate his universal policy, the reinstated policy would have been subject to a new suicide contestability clause. The plaintiff objected to the testimony but without giving reasons for the objection. In closing argument, counsel for the plaintiff argued that Miles's testimony was not credible. He did not point to any evidence demonstrating that Miles's testimony on this point was incorrect.

In her brief, the plaintiff claims that "[t]his line of questioning was clearly prejudicial" and that "[u]nder the circumstances, [she] . . . is entitled to a new jury trial on the issue of negligence." This assertion does not rise to the level of appellate advocacy required by Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). See *Powers* v. *H.B. Smith Co.*, 42 Mass. App. Ct. 657, 664-665 (1997). The mere fact that evidence is prejudicial does not make it inadmissible. Moreover, although the plaintiff did object at trial, she did not explain the basis for

her objection. Thus, she did not preserve the issue for appeal in any case. See *CBI Partners Ltd. Partnership* v. *Chatham*, 41 Mass. App. Ct. 923, 926 (1996). See generally Liacos, Massachusetts Evidence § 3.8.2, at 87-88 (6th ed. 1994).

*Judgment affirmed.*