NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-595

ADOPTION OF XENOS.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a trial in the Juvenile Court,[2] a judge determined that the father and the mother were unfit to parent their child, Xenos, and entered decrees terminating their parental rights. The father and mother appealed from the decrees.  The father, who waived counsel and represented himself at trial with the assistance of standby counsel, contends that the judge failed to give proper attention to potential explanations for his escalating mental health symptoms, including his demeanor and conduct while in court, and so failed to recognize the possibility that his unfitness was transient.  He also argues that the judge's review of an affidavit prepared by counsel for the Department of Children and Families (department) in support of the department's motion to substitute counsel created an

---

[1] A pseudonym.

[2] This was, in fact, the second such trial in this matter.  The first ended in a mistrial.  See note 4, infra.

appearance of bias that required the judge to recuse herself from the case.[3]  The mother, who does not contest the finding of her permanent unfitness to parent Xenos, but who supported the father's efforts to retain his parental rights to Xenos, argues that the judge failed to take adequate steps to ensure that the father was competent to waive counsel, and that the judge's failure to do so cleared the way for the father to act in a way that led the judge to be biased against the mother, as the father's supporter.  Additionally, she contends that the judge failed adequately to address the issue of posttermination contact between the parents and the child in her order for visitation.  After careful review of the record, we affirm.

Discussion.  1.  Father's appeal.  a.  Duration of father's unfitness.  The father's first challenge is to the judge's conclusion that his parental unfitness was likely to be permanent.  The judge here made the "specific and detailed findings in support of [her] conclusion" required to "demonstrate[e] that she [gave] the evidence close attention." Adoption of Nancy, 443 Mass. 512, 514-515 (2005).  Reviewing those findings, we identify no clear error in them (indeed, the father does not argue they are clearly erroneous) nor any abuse

_____

[3] In the affidavit, counsel for the department recounted statements the father made to her outside the court room after the trial had begun and which counsel averred required her to withdraw from the case.

2

of discretion or other error in her ultimate conclusion that the father was unfit.  See Adoption of Ilona, 459 Mass. 53, 59 (2011).  In assessing the father's fitness, the judge was entitled to consider the father's lapses in self-control during the trial, see Adoption of Yvonne, 99 Mass. App. Ct. 574, 580 (2021) (parent's behavior during trial relevant to parental fitness); the escalating symptoms of mental illness he displayed in the months preceding the trial at issue here and their impact on his ability to act in the child's best interests, see Care & Protection of Bruce, 44 Mass. App. Ct. 758, 764 (1998), quoting G. L. c. 210, § 3 (c) (xii) (significance of mental illness that interferes with parent's ability "to provide minimally acceptable care of the child"); his history of threatening behavior to department workers and others, see Adoption of Yvonne, supra (parent's ability to manage anger relevant to fitness); the parents' history of "mutual domestic violence," see Adoption of Jacob, 99 Mass. App. Ct. 258, 262 (2021) (evidence of domestic violence relevant to parental fitness); and the father's unsanctioned removal of the child from school and supervised visits, see Adoption of Varik, 95 Mass. App. Ct. 762, 767 (2019) (parent's conduct placing child at risk relevant to parental fitness).

In considering the duration of the father's unfitness, the judge "[was permitted to] consider [this] past conduct to

predict future ability and performance."  Adoption of Katharine,

42 Mass. App. Ct. 25, 32-33 (1997).  Where, at the time of

trial, the father was unfit and was not engaging in the steps

required to demonstrate progress toward a return to fitness, the

judge was not required to postpone a determination that was

otherwise in the child's best interests based on "a 'faint

hope'" that the father would become fit at some unknown time in

the future.  Adoption of Ilona, 459 Mass. at 59, quoting

Adoption of Inez, 428 Mass. 717, 723 (1999).  We discern neither

an abuse of discretion nor clear error in the judge's conclusion

that the father's unfitness was likely to be permanent.

To the extent that the father now contends that the judge

should have considered whether the worsening of the father's

mental health in the months before the trial at issue here

(second trial) was merely a temporary response to a concerning

procedural problem that arose in the course of the first trial,[4]

the issue was not squarely raised below, and so it is waived.

---

[4] When the case first went to trial in 2021, the parties
understood that the trial was limited to the issue of the
parents' unfitness.  During the trial, however, the parties
learned that the judge had converted the trial into a
termination of parental rights proceeding, apparently on the
grounds that she would not consider reunifying a child with
"parent[s] [who are] using drugs."  The case was ultimately
mistried and the case assigned to a different judge for a new
trial on the termination of the parents' rights.  Here, we
consider only the parents' appeal from aspects of the second
trial.

See Adoption of Bea, 97 Mass. App. Ct. 416, 430 (2020); Adoption of Norbert, 83 Mass. App. Ct. 542, 545 (2013).  See also Mayer v. Cohen-Miles Ins. Agency, Inc., 48 Mass. App. Ct. 435, 444-445 (2000) ("although the plaintiff did object at trial, she did not explain the basis for her objection.  Thus, she did not preserve the issue for appeal").

Even if it were not waived, however, the argument is unavailing.  While we acknowledge the likelihood that the events of the first trial would have left the father both unhappy and suspicious of the courts, it does not necessarily follow that the escalation of the father's mental health that occurred here close in time to the first trial was just a temporary response to those events.  In fact, the judge's finding that the father's worsening symptoms were "similar in nature -- though far more extreme -- to behaviors he exhibited in the past when using substances" supports a different conclusion.  Furthermore, the father does not challenge the judge's findings that the father refused to participate in the mental health evaluations required under his action plans with the department and refused mental health services when they were offered.  In the circumstances, the judge cannot be faulted for refusing to speculate about the possibility of the father's improvement in the future.

b.  Bias.  Although the father argues that the judge abused her discretion in denying the mother's motion to recuse herself

5

on the grounds of bias, he did not raise the issue at trial; his claims are therefore waived.[5]  See Adoption of Bea, 97 Mass. App. Ct. at 430.

2.  Mother's appeal.  a.  Mother's challenge to father's competency to waive counsel.  As we have noted, the father represented himself at trial, assisted by standby counsel.  On appeal, the mother argues that the judge failed to conduct an appropriate inquiry into the father's competence to waive counsel before the trial began, and that the father's conduct after the department moved to substitute counsel on the second day of trial required the judge to act sua sponte to assess the father's competence to waive counsel.

Even assuming the mother's right to raise these issues (a point she does not support with any legal authority), her arguments are unavailing.  As to the father's original waiver of counsel, the mother has not provided us with any contemporaneous record beyond a copy of the trial court's docket to show us what the judge's considerations and inquiry were.  See Chokel v. Genzyme Corp., 449 Mass. 272, 279 (2007) (appellant obligated to develop record).  The mother likewise fails to point to any record evidence that the facts and circumstances of the case

---

[5] As we discuss below, however, with respect to the mother's bias argument which was preserved, the judge acted within her discretion and committed no error in denying the mother's motions to recuse herself and declare a mistrial in the case.

6

raised "'bona fide doubt' as to the [father's] ability to make an informed decision to proceed without counsel" that would have triggered the judge's obligation to make the mid-trial inquiry into the father's competency to waive counsel that the mother now contends was required. Commonwealth v. Haltiwanger, 99 Mass. App. Ct. 543, 556 (2021), quoting Commonwealth v. Barnes, 399 Mass. 385, 389 (1987). In the circumstances, we do not consider the argument further.

b. Motion for recusal and mistrial. On the second day of trial, the department moved to substitute a new attorney in place of the lawyer who had represented it through the first trial day. According to an affidavit signed by the department's original trial counsel, the substitution was necessary based on the father's having made what she perceived to be threatening statements to her after the first trial day about what he would do "if [the department] tr[ied] to keep [him] away from [Xenos]." After a nonevidentiary hearing,[6] the judge allowed the department's motion, concluding that "the matters alleged in the [department's] affidavit" (emphasis supplied) required new counsel to step in for the department. Based on that ruling, the mother moved for the trial judge to recuse herself from the

---

[6] The judge took no testimony at the motion hearing and made no assessment of the credibility of the allegations set forth in the department's affidavit.

7

case on the grounds that she could no longer be impartial; she also asked the judge to declare a mistrial in the case. The judge denied the mother's motion. Reviewing the judge's ruling for an abuse of discretion, see Fitzpatrick v. Wendy's Old Fashioned Hamburgers of N.Y., Inc., 487 Mass. 507, 517 (2021) (mistrial); Demoulas v. Demoulas Super Mkts., Inc., 428 Mass. 543, 546 (1998) (recusal), we discern none.

As she explained on the record, the judge responded to the mother's motion for recusal by correctly engaging in a two-step process; first, examining her own conscience for bias, and finding herself impartial, then asking whether, objectively, "[her] impartiality might reasonably be questioned." DeMoulas, 428 Mass. at 546 n.6, quoting Haddad v. Gonzalez, 410 Mass. 855, 862 (1991). See Parenteau v. Jacobson, 32 Mass. App. Ct. 97, 103-104 (1992). The mother does not challenge the judge's subjective assessment of her own impartiality and we discern no abuse of discretion in the judge's conclusion at either the first or second steps. As the judge pointed out, her ruling on the department's motion to substitute turned on the department's allegation that the father had made certain comments to counsel, and not on any assessment of the credibility of those allegations. We are satisfied that nothing about that assessment would raise a reasonable concern about the judge's impartiality, and that the judge's denial of the mother's motion

8

to recuse herself was not an abuse of discretion. See DeMoulas, 428 Mass. at 546. Given that conclusion, we are likewise satisfied that the judge acted within her discretion in denying the mother's motion for a mistrial premised on her claim of judicial bias. See Fitzpatrick, 487 Mass. at 517 (abuse of discretion standard); Elder v. Commonwealth, 385 Mass. 128, 136 (1982) (judge's impartiality was not in question "and therefore his obligation was to deny the motion for mistrial").

3. Mother's remaining trial-related claims. The mother has failed to show clear error in the judge's finding that at the September 2021 pretrial conference, "Father interrupted the Court as soon as the Court started to ask a question by saying, 'I don't understand. I don't understand,' though it was clear to the Court that Father understood the Court's questions." See Commonwealth v. Source One Assocs., Inc., 436 Mass. 118, 124 (2002), quoting Starr v. Fordham, 420 Mass. 178, 186 (1995) ("The inquiry is not whether we would have reached the same result as the judge but rather whether, on the entire evidence, we are 'left with the definite and firm conviction that a mistake has been committed'"). We likewise reject the mother's contention that the trial judge failed to maintain appropriate control over the court room during the course of the trial. Indeed, in the circumstances here, we commend the judge for her measured approach to the challenges that arose during the course

9

of the trial; we are satisfied that her efforts ensured a fair trial for all parties. See Commonwealth v. Rogers, 46 Mass. App. Ct. 109, 110 (1999).

The mother's remaining arguments were not preserved below by the mother and so were waived. See Adoption of Bea, 97 Mass. App. Ct. at 430.

4. Posttermination contact. Although the trial judge terminated the parents' rights to Xenos, she recognized the existence of "a significant [and mutual] emotional relationship" between the parents and the child.[7] Determining that it was in Xenos's best interests to maintain that relationship, the judge ordered that "[Xenos] have access to and visitation rights with his biological parents throughout the period of his placement in the custody of the Commonwealth and subsequent to any guardianship or adoption of said child." The order further provided for visits twice each year for a minimum of one hour per visit. "The location and time of each visit shall be at the sole discretion of the legal guardian or adoptive parent[.]"

---

[7] Both the mother and the father have shown love and affection for Xenos, and none of the judge's findings suggest otherwise. Despite the moral overtones of the statutory term "unfit," the judge's decision was not a moral judgment. A judge may find that a mother and father love and provide for their child to the best of their ability, but nonetheless reach the conclusion that the best interests of the child warrant termination of parental rights. This is the case here.

10

The mother reads this order to address postadoption contact, but to omit reference to posttermination contact. That reading is incorrect. There is no requirement that the judge express her order in any particular terms, and a plain reading of the language used here satisfies us that the order gives the parents both posttermination and postadoption visitation rights.

Satisfied that the order addresses the parents' rights to visitation, we discern no abuse of discretion in the frequency and duration of the visits as the judge ordered them.[8] See Adoption of Rico, 453 Mass. 749, 756 (2009) (standard of review). The purpose of posttermination visitation is to ease the child's transition into a new placement and to facilitate his ability to bond with his preadoptive family. See Adoption of Edgar, 67 Mass. App. Ct. 368, 371 (2006). Where Xenos had been living with his preadoptive parent for several years by the time of trial and had developed a strong bond with the preadoptive parent, the judge could reasonably have concluded that it was in his best interests to continue to promote his relationship with the preadoptive parent as his primary source

---

[8] We also recognize that the order establishes only the minimum to which the parents are entitled. It does not foreclose the possibility that the parents may agree with the department or Xenos's preadoptive and adoptive parent(s), as appropriate, on a more expansive schedule and does not impact Xenos's right to petition the court for a change to that schedule. See Adoption of Rico, 453 Mass. 749, 756 (2009).

11

of support, and to limit his contact with the biological parents accordingly.  See Adoption of Rico, supra at 757 (visitation dictated by consideration of child's best interests).

Conclusion.  The decrees terminating the parental rights of the mother and the father to the child are affirmed.  The order for visitation is affirmed.

So ordered.

By the Court (Rubin, Henry & Hand, JJ.[9]),

*Joseph F. Stanton*

Clerk

Entered:  May 9, 2023.

---

[9] The panelists are listed in order of seniority.

12